**UNITED STATES of America, Plaintiff,**

v.

**Danilo Zabala ARTEZ, a/k/a Chico Artez, Marquetta Hays, and Paul Boyd, Defendants.**

**Crim. No. 1–78–102(01), (04), (05).**

United States District Court,
D. Minnesota,
First Division.

April 17, 1979.

Daniel W. Schermer, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Peter J. Thompson, Minneapolis, Minn., for defendant Danilo Zabala Artez.

Leon A. Trawick, Minneapolis, Minn., for defendant Marquetta Hays.

Wood R. Foster, Jr., Minneapolis, Minn., for defendant Paul Boyd.

## ORDER

MacLAUGHLIN, District Judge.

This matter comes before the Court on the motion of defendants to call an alternate juror and interrogate him regarding conversations he allegedly engaged in with members of the jury. Defendants were found guilty of selected counts of a thir-

teen-count indictment.[1] The trial began on Tuesday, March 13, 1979, and was submitted to the jury on Wednesday, March 28, 1979. The jury deliberations commenced late in the afternoon of March 28, 1979, and concluded midafternoon on Friday, March 30. The jury was sequestered during deliberations.

Four alternate jurors were selected for service and were excused when the jury retired to deliberate late in the afternoon of Wednesday, March 28th. The next morning, while the jury deliberated, defense counsel informed the Court that defendant Jimmy Taylor had conversed with one of the alternate jurors, Mr. James Hansen, and Mr. Hansen's comments allegedly revealed prior knowledge of defendants Paul Boyd and Jimmy Taylor and discussion during trial by members of the jury concerning the guilt or innocence of the defendants. The Court immediately conducted a hearing and examined Mr. Taylor as to the nature and contents of the conversation. Mr. Taylor revealed that he was sitting at a table in Brandy's restaurant, located across the street from the courthouse, at approximately 9:30 p. m. the evening of March 28th, when Mr. Hansen,[2] an alternate juror, approached and sat down at the table. (T. 3–4)

> Mr. [Hansen] said that he knew Paul Boyd and myself from a long time back through some of his friends. And he also said that if he would have still been on the jury that we would have been convicted immediately. And that from listening to the case, from what he got the understanding from the rest of the jurors, that we would have been convicted after the second day, as far as he was concerned.

(T. 4) In amplification of this latter comment, Mr. Taylor testified that Mr. Hansen had said "that he had talked to the jurors and that the understanding that he got that we were guilty after the second day." (T. 5) Mr. Taylor indicated that three people had seen the two of them together at the table. (T. 5)

After discussions with counsel, the Court concluded that each member of the regular jury should be individually questioned if a guilty verdict was returned. Immediately after the jury returned its verdicts, the Court conducted the questioning in open court in the presence of defendants and defense counsel. Each juror was summoned singly to the courtroom and asked the following questions:

1. Certain allegations have been made to me that one of the alternate jurors, specifically Mr. James Hansen, claims or has claimed to have had some knowledge of one or more of these defendants prior to the time of trial. Did alternate juror James Hansen ever discuss any of these defendants with you at any time during the pendency of this trial?

2. Did you ever overhear Mr. Hansen discuss any of these defendants with any other members of the jury?

3. Allegations have also been made that at times during the trial, that is, between the time that the jury was selected and the time that you went out for deliberations, that there may have been conversations amongst two or more members of the jury concerning the guilt or innocence of one or more of these defendants. Did you take part in any conversations at any time prior to your beginning delibera-

---

1. Twenty-one counts comprised the superseding indictment. Count XIX was dismissed by the Court and Counts XVIII and XXI were dismissed by the Government before trial. At the close of the Government's case, it dismissed Counts VI, XI, XII, XIII, and XIV, and the Court granted the motions of defendant Wilbert Farrell Ratliff, a/k/a Jimmy Taylor, for judgment of acquittal as to Counts IX and X. Defendant Taylor was acquitted by the jury on the remaining count against him, Count I. The other defendant, George Clark, pled guilty during the trial to Count VIII.

2. Mr. Taylor identifies the individual as "Mr. Hench," but all counsel agree that the individual identified is Mr. James Hansen. It should be made clear that at the time of this conversation Mr. Hansen had been excused from any further service as a juror in this case since the regular jury was at that time deliberating the case.

458

tions concerning the guilt or innocence of any of these defendants?

4. Did you overhear any of the other members of the jury discuss the guilt or innocence of any of these defendants?

Eleven of the twelve jurors answered "no" unequivocally to each of the four questions. Furthermore, each responded affirmatively to the following query by the Court: Was your decision in this case based solely on the evidence that you heard in this courtroom and on the exhibits that I received into evidence and not on anything that you heard outside the courtroom?

One of the jurors, Mr. Jerome Buboltz, after responding in the negative to the first two questions, responded affirmatively to the Court's third question. Mr. Buboltz volunteered that he had participated "[a] little bit" in such a discussion, but added that it "was just strictly joking." (T. 7) In response to further inquiry about the discussion which took place during the "first . . . stage" of trial (T. 8), Mr. Buboltz stated:

What it was, we said it looks like they are all guilty, you know. That was it. That was the extent of it, like that.

(T. 8) The Court then reinquired whether Mr. Hansen had imparted to Mr. Buboltz or anyone else Mr. Hansen's knowledge of the defendants. Mr. Buboltz's denial was unequivocal. The Court then asked again about the "joking references" made to the guilt of the defendants. That interrogation proceeded as follows:

THE COURT: Now, let me get back to the other question. I think you have indicated that there may have been some joking references.

JUROR BUBOLTZ: It wasn't—he said that they all look like they are guilty. It looks like they all were in on the same thing. That's what it was.

. . .

JUROR BUBOLTZ: It was just me and Jim, you know, that I know of.

THE COURT: You and Jim. Are you talking about Jim Hansen?

JUROR BUBOLTZ: Yes.

THE COURT: This alternate?

JUROR BUBOLTZ: The alternate.

THE COURT: I see. And the statement that you are talking about then may have come from Mr. Hansen, is that right?

JUROR BUBOLTZ: That was it, yes.

THE COURT: I see. He made that statement, is that right?

JUROR BUBOLTZ: Right.

THE COURT: No other member of the jury made that statement?

JUROR BUBOLTZ: No.

THE COURT: And you didn't make that statement?

JUROR BUBOLTZ: No.

THE COURT: So if that statement was made, it was made by this Alternate Juror Mr. Hansen, who did not serve on the jury?

JUROR BUBOLTZ: Right.

THE COURT: And you took it to be a joke or a statement made in jest, is that right?

JUROR BUBOLTZ: Definitely.

. . .

THE COURT: Have you then related to me everything that you know about the matters that I have just inquired of, conversations and so on?

JUROR BUBOLTZ: Yes.

THE COURT: The only conversation you ever heard was a comment made by Mr. Hansen that you have related to me here in court, is that right?

JUROR BUBOLTZ: Yes.

THE COURT: And you didn't make a comment of that type?

JUROR BUBOLTZ: I paid no attention because he was an alternate juror.

THE COURT: And you didn't hear any of the other members of the jury make any reference to the guilt or innocence of these defendants at any time prior to the time you went into the jury deliberation room, is that right?

JUROR BUBOLTZ: No.

. . .

THE COURT: Mr. Buboltz, there is one further question that I want to ask you which I asked the other jurors and I think I neglected to ask you.

Was your decision in this case based solely on the evidence that you heard in this courtroom and on the exhibits that I received into evidence, and not on anything that you heard outside the courtroom?

JUROR BUBOLTZ: Yes, it was.

Defense counsel now move that alternate juror James Hansen be called and interrogated about any conversations he may have had with members of the jury. The Court, evaluating the request in light of the inquiry already conducted and finding that nothing further is to be gained by pursuit of this matter, denies the motion.

An allegation that a juror had knowledge of a defendant before the beginning of a trial is by nature serious for it invokes the defendant's rights under the sixth amendment. See, e. g., *Taylor v. Mabry*, 593 F.2d 318 (8th Cir. 1979); *United States v. Blair*, 444 F.Supp. 1273 (D.D.C.1978). See generally, *Government of Virgin Islands v. Gereau*, 523 F.2d 140 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976). There is no allegation here that any of the jurors other than James Hansen had prior knowledge of the defendants, and there is no evidence that Mr. Hansen communicated his knowledge to the other jurors including Mr. Buboltz. Mr. Taylor testified only that Mr. Hansen stated that he knew of defendants Boyd and Taylor long ago through friends, not that Mr. Hansen stated he discussed his knowledge with other jurors. Each of the 12 jurors who took part in deliberations denied participating in or overhearing any such conversation with Mr. Hansen. The Court finds the jurors' testimony to be credible. Throughout the trial the court repeatedly admonished the jurors not to discuss the case with anyone, including their fellow jurors. The Court is convinced that the prior knowledge which Mr. Hansen allegedly possessed did not taint other members of the jury, and because Mr. Hansen was discharged when the

jury retired, his prior knowledge did not enter the jury's deliberations. Consequently, defendants' rights were not infringed. Compare, *United States v. Cardarella*, 570 F.2d 264 (8th Cir.), *cert. denied*, 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 87 (1978). See also, *United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977).

As serious as charges of prior knowledge are charges that jurors early in trial collectively determined the guilt of a defendant. "A criminal trial is of course no place for bias or prejudice, even 'in jest.'" *United States v. Hockridge*, 573 F.2d 752, 756 (2d Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978). Eleven of the jurors denied any conversations during trial concerning the guilt or innocence of the defendants. One juror, Mr. Buboltz, responded that the alternate juror had made a statement in the presence of Mr. Buboltz concerning the guilt of the defendants, but Mr. Buboltz stated that he "paid no attention" to it, and that he decided the case solely on the evidence heard in the courtroom and on nothing else. The Court finds Mr. Buboltz's recollection of the conversation to be credible. Again, the question is not whether the conversation reveals prejudice in the mind of Mr. Hansen, since he took no part in deliberations, but whether Mr. Buboltz or other members of the jury might have been influenced by the discussion so as to affect their verdicts.

The testimony of Mr. Buboltz that he took Mr. Hansen's statement in jest and disregarded it is corroborated by the length and result of the jury's deliberations. The jury deliberated for two days and asked four questions of the Court. Far from viewing the defendants as being all guilty or all in it together, the jury carefully examined the guilt or innocence of each defendant on each count. Mr. Artez, against whom the prosecution's evidence was largely directed, was acquitted on four of the 12 counts in which he was charged. Ms. Hays, the only white defendant, was convicted on all four counts in which she was charged. Mr. Boyd was acquitted on three of the four

counts in which he was charged. Mr. Taylor, who is black, was acquitted on the crime of conspiracy, the only count in which he was charged. The evidence is that an exceptionally and unusually dedicated and intelligent jury sat fairly and impartially in this case. Compare, *United States v. Jones*, 542 F.2d 186, 211 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976); *United States v. Hockridge,* 573 F.2d 752, 756 (2d Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978).

In summary, in response to defense counsel's allegations of juror misconduct, the Court interrogated the source of those allegations, Mr. Taylor, and each of the jurors individually after verdicts were returned. See, *Taylor v. Mabry*, 593 F.2d 318, 320 (8th Cir. 1979); *United States v. Eagle*, 539 F.2d 1166, 1170–71 (8th Cir. 1976), *cert. denied*,

429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977); *United States v. Williams*, 545 F.2d 47, 51–52 & n. 5 (8th Cir. 1976). That interrogation and the verdicts themselves firmly convince the Court that the jurors who passed upon the guilt or innocence of the defendants were untainted by any misconduct. Further exploration of the alleged misconduct is unwarranted.

Therefore, IT IS ORDERED that the motion of defendants to call alternate juror James Hansen for interrogation be and hereby is denied.