UNITED STATES of America, Appellee,

v.

Paul BOYD, Appellant.

UNITED STATES of America, Appellee,

v.

Danilo Zabala ARTEZ a/k/a Chico
Artez, Appellant.

UNITED STATES of America, Appellee,

v.

George CLARK, Appellant.

Nos. 79–1482, 79–1492 and 79–1554.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1979.

Decided Dec. 6, 1979.

Certiorari Denied Feb. 19, 1980.
See 100 S.Ct. 1052.

522

Paul Boyd, and Wilbert Farrell Ratliff a/k/a Jimmy Taylor. The indictment charged the defendants had violated 18 U.S.C. §§ 2421–22 (Mann Act); 18 U.S.C. § 1952 (Interstate Travel in Aid of Racketeering); and 18 U.S.C. § 371 (Conspiracy).

The trial began on March 13, 1979. On March 21, 1979, defendant George Clark entered a guilty plea to one of three counts against him. On March 30, 1979, after two and one-half days of deliberation, the jury returned its verdict. Artez was convicted on eight of twelve counts; Marquetta Hays was convicted on all four counts with which she was charged; Paul Boyd was convicted on one of the four counts against him; and Jimmy Taylor was acquitted of the crime of conspiracy, the only charge against him.

Wood R. Foster, Jr., Grossman, Karlins, Siegel & Brill, Minneapolis, Minn., for appellant, Boyd, in No. 79–1482.

Peter J. Thompson, Delaney & Thompson, Ltd., Minneapolis, Minn., for appellant, Artez, in No. 79–1492.

Mark W. Peterson, Friedberg & Peterson, Minneapolis, Minn., for appellant, Clark, in No. 79–1554.

Daniel W. Schermer, Asst. U.S. Atty., Minneapolis, Minn. (argued), and Thorwald H. Anderson, U.S. Atty., Minneapolis, Minn., on brief, for appellee.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendants Danilo Artez and Paul Boyd appeal from their convictions by a jury and defendant George Clark appeals from the district court's [1] denial of a motion to withdraw a plea of guilty. The appeals have been consolidated. We affirm the convictions of Artez and Boyd, and the denial of Clark's motion.

On January 12, 1979, a federal grand jury returned a superseding indictment against defendants Danilo Zabala Artez a/k/a Chico Artez, George Clark, Marquetta Hays,

On May 30, 1979, Artez was sentenced to fifteen years imprisonment and Boyd to four years imprisonment. The next day Clark, who had obtained a delay in sentencing, moved to withdraw his guilty plea. The court held an evidentiary hearing on Clark's motion and then, on June 26, 1979, denied the motion. On June 29, 1979, Clark was sentenced to three years imprisonment.

I. George Clark

Defendant Clark appeals the district court's refusal to withdraw his guilty plea. Withdrawal is allowed pursuant to the terms of Fed.R.Crim.P. 32(d). The trial started on March 13, 1979, and Clark entered a plea on March 21, 1979, after most of the evidence relating to his involvement had been received. Sentencing of defendant and his co-defendants who were found guilty by the jury was set for May 30, 1979. At Clark's request, his sentencing was postponed. The day after his co-defendants were sentenced, Clark, sought to withdraw his guilty plea.

Clark's contentions arise from the viability of a possible state charge under investigation by state law enforcement officials, which concerned an alleged kidnap of a

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

young woman by Clark and co-defendant Jimmy Taylor. The prosecutor stated as a basis[2] for the plea negotiations that state authorities would not proceed with their investigation if Clark received a jail sentence, otherwise they would proceed. Clark does not claim the assurance was broken, but states it was meaningless and fraudulent because state authorities never intended to prosecute him for this incident.

Fed.R.Crim.P. 32(d) distinguishes between motions to withdraw a guilty plea made before and after sentencing. Generally presentence motions are to be judged on a "fair and just" standard. *United States v. Lambros*, 544 F.2d 962, 965 (8th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). In reviewing the denial of the motion to withdraw a guilty plea, we will reverse only for abuse of the trial court's discretion and the burden is upon the petitioner to establish his grounds for withdrawal of the pleading. *Smith v. United States*, 359 F.2d 481, 483 (8th Cir. 1966).

Clark attempted to meet this burden by showing that co-defendant Jimmy Taylor, though acquitted on the federal charge, was not prosecuted by the state for the alleged kidnap, and that he received only a light sentence on an unrelated state charge. We believe the district court conducted a proper hearing, and determined that the state investigation was under way. The court concluded that the defendant received the benefit of his bargain because his plea and sentence to incarceration stayed the state investigation. It determined Clark failed to prove state authorities would not have prosecuted him. We cannot say this finding is clearly erroneous. We are satisfied that the district court's denial of the motion to withdraw the plea of guilty was not an abuse of discretion.

We also note that Clark did not attempt to withdraw his plea until after his co-defendants were sentenced to incarceration.

The district court could have concluded that withdrawal would have allowed Clark to use the guilty plea as a means of testing the weight of the potential sentence, which is a primary policy ground for denying plea changes. *United States v. Kay*, 537 F.2d 1077, 1078 (9th Cir. 1976). *See United States v. Simmons*, 497 F.2d 177, 179 (5th Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 643 (1974).

## II. Danilo Artez

### A. *Jury Misconduct*

Defendant Boyd joined defendant Artez in alleging juror misconduct during the trial. The district court's opinion concerning this issue, *United States v. Artez*, 468 F.Supp. 456 (D.Minn.1979), recites in detail the circumstances surrounding the alleged misconduct. Briefly, alternate juror Hansen was excused from the case when the jury retired to deliberate. After being so discharged, Hansen had a brief discussion with co-defendant Jimmy Taylor. Hansen told Taylor that he knew of Taylor and Boyd through friends, and if he, Hansen, was on the jury they would have been convicted immediately.

The district court promptly conducted a hearing and Taylor testified to the above conversation. The court allowed the jury to finish deliberations and return the verdicts. It then questioned each juror about any conversations they may have had with alternate juror Hansen concerning the defendants, or any conversations they had prior to the beginning of deliberations concerning the guilt or innocence of any of the defendants. Eleven of the twelve jurors answered "No" unequivocally to all questions.

One juror, Mr. Jerome Buboltz, answered "Yes" to one question, and as a result was interrogated by the court. That inquiry appears at 468 F.Supp. 458–59. Apparently Hansen had said to Buboltz early in the

---

**2.** Other elements of the plea bargain were that the other two counts with which Clark was charged would be dismissed, that a presentence investigation report would be ordered, that defendant would not be called as a witness by the government, and that no allegation of force would be made by the government as to the count to which defendant changed his plea.

trial that "it looks like they are all guilty, you know," or something similar. Buboltz answered questions from the court indicating he did not take the comment seriously or consider it in reaching his decision, which he stated was based only on evidence heard in court and exhibits received in evidence.

The defendants' contention is that the court should have also allowed defense counsel to question Mr. Buboltz and that alternate juror Hansen should have been called. We are satisfied by the district court's investigation of this issue and approve of its conclusion:

> In summary, in response to defense counsel's allegations of juror misconduct, the Court interrogated the source of those allegations, Mr. Taylor, and each of the jurors individually after verdicts were returned. *See, Taylor v. Mabry,* 593 F.2d 318, 320 (8th Cir. 1979); *United States v. Eagle,* 539 F.2d 1166, 1170–71 (8th Cir. 1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977); *United States v. Williams,* 545 F.2d 47, 51–52 & n. 5 (8th Cir. 1976). That interrogation and the verdicts themselves firmly convince the Court that the jurors who passed upon the guilt or innocence of the defendants were untainted by any misconduct. Further exploration of the alleged misconduct is unwarranted.

468 F.Supp. at 460.

### B. *Severance*

Both Artez and Boyd raised contentions on appeal relating to whether defendants were so prejudiced by the joint trial as to require severance. The contentions made by Boyd are different than those made by Artez, but basically there is agreement that joinder under Fed.R.Crim.P. 8 was proper. Defendants argue that severance was mandated by Fed.R.Crim.P. 14 because of alleged prejudice resulting from the joint trial.

■■ The principles which must be applied here were discussed in detail in *United States v. Jackson,* 549 F.2d 517, 523–29 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). That case first noted the general rule that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts. The motion to sever is addressed to the discretion of the trial court and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. A defendant must show something more than the fact his chances for acquittal would have been better had he been tried separately, he must affirmatively demonstrate the joint trial prejudiced his right to a fair trial. *Id.* at 523–24.

Boyd's major contention is that only two of twenty-eight witnesses testified with reference to his activities, and without the overwhelming bulk of other evidence which did not pertain to Boyd, but which was highly inflammatory, he would not have been found guilty of conspiracy.

A similar contention was made in *Jackson, supra.* That court stated that a "defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than the evidence against him. * * * Severance becomes necessary where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants." *Id.* at 525.

A review of the record indicates that a jury could easily compartmentalize Boyd's activities in relation to those of Artez and the other defendants. The limited applicability of the evidence adduced was explained to the jury during the process of the trial. Additionally, proper instruction was given, and the verdicts returned indicates careful consideration, not confusion, on the part of the jury. *Id. See United States v. Artez, supra,* 468 F.Supp. 459–60.

■ The contention of Artez differs from that of Boyd concerning severance. His claim is that he was prejudiced during trial and especially in closing argument because the co-defendants' counsel used as a strategy the establishing of Artez as the bad guy, and then attempting to disassociate their

clients from him. We note that the duty to grant a severance continues throughout the course of trial at any time the prejudice appears. *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). Counsel for Artez moved for a severance both during and after closing arguments. Briefly, Artez contends there was prejudice because co-defendant Jimmy Taylor's theory of trial was that there was no evidence connecting him to Artez' crossing of state lines; co-defendant Marquetta Hays contended that she was a victim of brainwashing by Artez; and co-defendant Boyd argued he should not be convicted simply because he was associated with Artez. Artez states his defense was that he was engaged in the legitimate business of arranging for exotic dancers to perform in night clubs. He contends the arguments of the other defendants therefore resulted in real prejudice to his right to a fair trial.

■ Clearly, to show an abuse of discretion Artez must show more than that his strategy was generally antagonistic to that of the other co-defendants. *United States v. Jackson, supra,* 549 F.2d at 525 n. 6; *United States v. Robinson,* 139 U.S.App. D.C. 286, 289, 432 F.2d 1348, 1351 (D.C. Cir. 1970). It must at the very least show that the conflict is so prejudicial that the differences are irreconcilable. *United States v. Robinson, supra,* 139 U.S.App.D.C. at 289, 432 F.2d at 1351.

■■ Artez here has not demonstrated he suffered real prejudice due to irreconcilable defenses. Instead it appears from the record that counsel for the co-defendants were fairly commenting on the evidence adduced at trial. The mere fact that there is hostility among the defendants, or one defendant may try to save himself at the expense of another is not sufficient grounds to require separate trials. *United States v. Barber,* 442 F.2d 517, 530 (3d Cir.), *cert. denied,* 404 U.S. 846, 92 S.Ct. 148, 30 L.Ed.2d 83 (1971); *United States v. Hutul,* 416 F.2d 607, 620–21 (7th Cir. 1969), *cert. denied,* 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970); *Dauer v. United States,* 189 F.2d 343, 344 (10th Cir.), *cert. denied,*

342 U.S. 898, 72 S.Ct. 232, 96 L.Ed. 672 (1951). Thus, neither Artez nor Boyd has demonstrated the "strong showing of prejudice" necessary to support their contention. *United States v. Hutul, supra,* 416 F.2d at 621.

### C. *Other Contentions*

■ Artez next alleges the government must state its reasons for using a peremptory challenge to remove blacks from the jury. There were two blacks on the original jury panel of forty-eight persons, and one black alternate juror on a panel of eight persons. One of the blacks on the original jury panel was struck for cause without objection, and the government used peremptory challenges to strike the remaining black on the jury panel and the potential alternate juror. Artez argues that without forcing the government to give its reasons for striking all the blacks on the jury panel, it is impossible to show discrimination on the basis of the record. This contention must fail because the Supreme Court has expressly held an examination of the prosecutor's reasons for using peremptory challenges is not required unless its appears that the purposes of the peremptory challenges are being perverted. *Swain v. Alabama,* 380 U.S. 202, 222–24, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *See United States v. Pollard,* 483 F.2d 929, 930 (8th Cir. 1973), *cert. denied,* 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974).

■ Artez next alleges that the introduction of several pieces of real evidence was improper under Fed.R.Evid. 403, which allows the trial judge to exclude evidence if its relevance is substantially outweighed by its unfair prejudicial effect. Artez argues the receiving in evidence of some bottles of pills and a piece of paper describing their use, which was introduced to show, *inter alia,* constructive possession of an apartment, was prejudicial. Also alleged to be prejudicial were photo albums including photos of some of the co-conspirators and other women naked; a shoe box containing sex devices and materials; and a gun. An examination of the record indicates this evi-

dence has at least some relevance to the government's case.

"[T]he task of balancing the probative value of the evidence against its purely prejudicial effect is primarily one for the trial court. And if the trial judge in the exercise of his discretion determines that the evidence should be admitted, we normally defer to his judgment." *United States v. Hall*, 565 F.2d 1052, 1055 (8th Cir. 1977). Here we see no abuse of discretion in the trial court's determination.

Related to this issue, Artez alleges the trial court erred in narrowly restricting the scope of cross-examination of the prior sex life of one of the girls transported, who was a prosecution witness. The prior sex life of the woman transported is usually not relevant. "Whether the woman be pure or impure, if her transportation be for the purpose of sexual immorality, the statute is violated." *Suslak v. United States*, 213 F. 913, 917 (9th Cir. 1914); *see also McGuire v. United States*, 152 F.2d 577, 579 (8th Cir. 1945). The trial court here allowed defense counsel to ask the witness whether she had had intercourse prior to meeting Artez, for how long a time, and on how many occasions. This was all that was necessary to attack credibility, or for the purpose of rebuttal, apparently the defendant's intentions regarding this cross-examination. There is no abuse of the trial court's discretion.

III.  Paul Boyd

In addition to the previously discussed jury misconduct and failure to sever arguments, see Part II A & B *supra*, Boyd argues that there was insufficient evidence to convict him of conspiracy. His involvement with the conspiracy must, therefore, be detailed. We view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences to support the conviction. *United States v. Losing*, 560 F.2d 906, 912 (8th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *United States v. Scholle*, 553 F.2d 1109, 1118 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977).

In late October two girls, Sue Brown and Theresa Morrison, accompanied Richard Peterson and another man from the girls' home in Wisconsin to Minneapolis, Minnesota. Peterson knew Artez and had contacted him before bringing the girls to Minnesota, and they had discussed putting the girls to work as prostitutes. Artez lived in Rochester and instructed Peterson to go to the Fair Oaks motel in Minneapolis. Artez promised to send over his "main man," Paul Boyd, to provide false identification and "do some driving."

Boyd arrived at the motel, and returned later accompanied by co-defendant Jimmy Taylor. They provided some false identification. The meeting of Boyd, accompanied by co-defendant Jimmy Taylor, with Peterson at the Fair Oaks is alleged overt act number five in the superseding indictment. Boyd then drove Peterson and the girls to Artez in Rochester.

Once in Rochester, Boyd was present as Artez and Peterson discussed putting the girls to work as prostitutes. Peterson returned to Minneapolis and stayed with Boyd. A little later Peterson and the girls were staying at a farm house when Boyd and Jimmy Taylor forcibly took Morrison from the house. She then lived with Taylor or Boyd for a short period. Boyd then traveled with Morrison to Wisconsin for her to learn dancing, and then brought her back to Minneapolis. Up to this time Morrison had done prostitution for Artez, but not for Boyd.

Later Boyd returned to Rochester, where it was discussed sending Morrison to Eagle Grove, Iowa to learn to dance. While in Eagle Grove with unindicted co-conspirator Kathy Mauthe, Morrison was virtually forced into prostitution. Morrison managed to leave Eagle Grove and return home to Wisconsin where she contacted police.

The above is basically Boyd's involvement with Artez, as adduced by evidence at trial. This involvement lasted from about October 31, 1977 through late November 1977, approximately three and one-half weeks. The

other overt acts and evidence at trial related to activity in 1978 not involving Boyd.

Boyd was acquitted of the substantive counts alleging illegal transportation of women for immoral purposes, two counts involving the girls' travel from Wisconsin to Rochester, Minnesota, and another count involving Morrison's travel from Rochester, Minnesota to Eagle Grove, Iowa. Co-defendant Jimmy Taylor, who often accompanied Boyd in the above activity, was acquitted of conspiracy. Boyd, therefore, argues the evidence introduced at trial, together with the above two facts, establishes as a matter of law that his conviction of conspiracy is not supported by sufficient evidence.

Boyd argues that because he was acquitted on the substantive counts, overt act five was not believed by the jury, and therefore his involvement in the conspiracy was not proved. We reject that argument. In this case, acquittal of the substantive offense does not constitute a determination the overt act was not committed, nor preclude a conviction on the conspiracy count. *See Nassif v. United States,* 370 F.2d 147, 151 (8th Cir. 1966); *Herman v. United States,* 289 F.2d 362, 368–69 (5th Cir.), *cert. denied,* 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). The court instructed the jurors that because Boyd only provided intrastate transportation, he could be convicted of the substantive Mann Act crime only if he had prearranged his efforts as part of the interstate journey. *See United States v. Clemones,* 577 F.2d 1247, 1253 (5th Cir. 1978). As the trial judge properly stated in his memorandum order, this instruction likely resulted in Boyd's acquittal of the substantive count. However, this does not mean that Boyd's appearance at the Fair Oaks motel with false identification did not further the conspiracy. Therefore, his acquittal does not negate participation in overt act five, and the verdicts are not inconsistent.

The district court also properly concluded that even if overt act five was not included in the conspiracy, Boyd could properly be convicted of the conspiracy. Only one of the co-conspirators need commit an overt act. Although Boyd was not involved in the overt acts occurring in 1978, the overt acts may be attributable to Boyd if he has not withdrawn from the conspiracy. The burden is on the defendant, having once been a member of the conspiracy, to demonstrate his withdrawal. He "must take affirmative action, either making a clean breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach co-conspirators." *United States v. Parnell,* 581 F.2d 1374, 1384 (10th Cir. 1978), *cert. denied,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979). Mere cessation of activities is not enough. *Id. See United States v. Panebianco,* 543 F.2d 447, 453 (2d Cir. 1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977); *cf. United States v. Cohen,* 516 F.2d 1358, 1364 (8th Cir. 1975). We agree with the district court that there is no evidence the defendant withdrew from the conspiracy. For these reasons, the trial court properly denied Boyd's motion for acquittal or a new trial based on the insufficiency of evidence.

We have examined the remaining allegations of the appellants and find them without merit.

The convictions of Danilo Artez and Paul Boyd, and the denial of the motion to withdraw the plea of guilty by George Clark, are affirmed.