**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Stanley NO HEART (# 14151) and Anna Williams (# 14160), Defendants and Appellants.**

**Nos. 14151, 14160.**

Supreme Court of South Dakota.

Argued Oct. 27, 1983.

Decided July 11, 1984.

Steve Miller, Deputy States Atty., Sioux Falls, for plaintiff and appellee; Joaquin K. Hanson, State's Atty., Sioux Falls, on brief.

Thomas W. Parliman, Sioux Falls, for appellant Stanley No Heart.

Joseph Neiles and Dan Jongeling, Sioux Falls, for appellant Anna Williams.

MORGAN, Justice.

Stanley No Heart (No Heart) and Anna Williams (Williams) appeal their first-degree robbery convictions. The issues raised on their appeal are: (1) Whether the evidence seized in the warrantless search of the motel room should be suppressed; (2) whether the trial court should have severed the trials of the two defendants; (3) whether simple assault or petty theft are

lesser included offenses of first-degree robbery; (4) whether admission of a police officer's opinion on the cause of the victim's injury was prejudicial error; and (5) whether a police officer's testimony regarding statements by a witness are inadmissible as hearsay. The trial court ruled in the negative on all issues and we affirm.

On November 10, 1982, Williams and Rachel High Elk (High Elk) met James Voigt (Voigt), the victim, in a bar in Sioux Falls, South Dakota. They proceeded to High Elk's apartment to have a party and while they were there No Heart joined the group. Voigt testified that in the course of the evening No Heart hit him on the side of the head, rendering him unconscious. When Voigt regained consciousness, he was face down on the floor with No Heart sitting on his back choking him. Voigt testified that while he was pinned on the floor he felt someone take his wallet from his hip pocket. No Heart finally released Voigt and told him to leave Williams, No Heart's girl friend, alone. When Voigt asked No Heart to return his wallet, No Heart turned to Williams. Voigt who could not see Williams because No Heart blocked his view, testified that apparently Williams reached inside her blouse for something and gave it to No Heart. No Heart turned back to Voigt and handed him the wallet. Voigt left the apartment, discovered cash and credit cards were missing from his wallet and reported the loss to the police. Later that evening a search of the motel room in which No Heart, Williams and High Elk were staying produced one of Voigt's credit cards. No Heart and Williams were charged with first-degree robbery and were convicted as charged by a jury.

The first issue No Heart raises in this appeal is whether the trial court should have suppressed evidence seized from the motel room because the search and seizure were illegal for lack of a search warrant. We affirm the trial court's refusal.

The record shows that No Heart checked into room number 23, but occupied room number 22. The investigating officers were directed to room 23 when they arrived at the motel looking for No Heart. The manager, upon noticing a light in room 22 and knowing that the room was unassigned, asked the officers to investigate the room. No Heart argues that the manager had no right to consent to a warrantless search of room 22 and cites *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The *Stoner* Court stated: "[T]here is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room." 376 U.S. at 489, 84 S.Ct. at 893, 11 L.Ed.2d at 860. This case is distinguishable from *Stoner*. In this case, the motel manager did not merely consent to a search of No Heart's room as did the manager in *Stoner*. In the case before us, the police were not only authorized, they were requested to search a room that was supposed to be vacant but was apparently occupied. It was not discovered until later that, through a comedy of errors, the room had been appropriated and occupied by the defendants.

In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court adopted a two-prong test for justifying the invasion of constitutionally protected privacies. Justice Harlan delineated the test as follows in his concurring opinion: (1) whether the defendant had an actual (subjective) expectation of privacy; (2) society's recognition of the defendant's expectation and the reasonableness of that expectation. 389 U.S. at 360–62, 88 S.Ct. at 516–17, 19 L.Ed.2d at 587–88.

The trial court applied this test and concluded that No Heart had a subjective expectation of privacy. It went on to hold, however, that under the peculiar circumstances of this case society would not recognize No Heart's expectation as reasonable because the motel manager had the right to authorize the police to check and enter the supposedly unoccupied room 22. The trial court further concluded that the rationale supporting the exclusionary

rule—deterrence of police misconduct—would not be advanced by suppression of the evidence challenged in this case. In our opinion, the trial court was correct in assuming that society would not recognize the defendant's expectation of privacy under these unusual circumstances and the trial court was not in error in refusing to suppress the evidence seized in the search.

The second issue is based on No Heart's request at trial for a jury instruction that simple assault, SDCL 22–18–1(5), is a necessarily lesser included offense of first-degree robbery by force and Williams' request for a jury instruction that second-degree petty theft, SDCL 22–30A–1 and –17, is a necessarily lesser included offense of robbery. The trial court denied both requests and both defendants raise this issue on appeal.

As was stated in *State v. Kafka*, 264 N.W.2d 702, 705 (S.D.1978) (Zastrow, J., concurring specially), "[t]here are two tests for determining whether an offense is 'necessarily included' in a greater offense: (1) legal and (2) factual. *Both* tests must be satisfied before a 'necessarily included offense' instruction should be given." (Emphasis added.)

▮▮▮ The legal test has been variously described, but succinctly stated it requires: (1) the elements of the lesser offense must be fewer than the greater; (2) the penalty for the included offense must be lesser than the greater; and (3) the two offenses contain common elements so that the greater offense cannot be committed without also committing the lesser. *Kafka, supra; State v. O'Connor*, 86 S.D. 294, 194 N.W.2d 246 (1972).

▮▮▮ Simple assault, as defined at SDCL 22–18–1(1) to (5), inclusive, requires as an element the attempt or causation of bodily injury, which is not a necessary element of first-degree robbery. This element of simple assault, in fact, the principal element thereof, is not a common element under the third phase of the legal test; therefore, simple assault is not a necessarily included offense of first-degree robbery. Because simple assault and first-degree robbery fail the legal test, we need not consider the factual test.

▮▮▮ Williams asserts that the trial court erred in refusing to instruct the jury on second-degree petty theft, set out at SDCL 22–30A–1 and –17, as a necessarily included lesser offense under the first-degree robbery charge. The trial court apparently agreed that theft was a necessarily included offense because it did instruct the jury on grand theft. There is, however, a wide distinction between grand theft and petty theft in the second degree as defined by SDCL 22–30A–17.[1] The former is a Class 4 felony and the latter is a Class 2 misdemeanor. Williams raises no objection on appeal to the giving of instructions 16, 17, and 18, on grand theft; in fact, it is entirely ignored in her brief. In view of the fact that the jury had an opportunity to consider a lesser included offense (grand theft), but returned a verdict of guilty on the greater offense, we can see no prejudicial error in the trial court's failure to also instruct on petty theft first degree and petty theft second degree.

The third issue considered in this appeal was raised by Williams. She questions whether the trial court erred in failing to sever her trial from No Heart's. SDCL 23A–11–2 expressly requires that "[i]f it appears that a defendant or the state is

---

1. SDCL 22–30A–17 provides:
Theft is grand theft, if:
(1) The value of the property stolen exceeds two hundred dollars;
(2) The property stolen is livestock or a firearm;
(3) Property of any value is taken from the person of another; or
(4) In the case of theft by receiving stolen property, the receiver is a dealer in stolen property, or the value of the property stolen exeeds (sic) two hundred dollars in value. Theft in all other cases is petty theft. Grand theft is a Class 4 felony. Petty theft is divided into two degrees. Petty theft of one hundred dollars or more is in the first degree and is a Class 1 misdemeanor. Petty theft of less than one hundred dollars is in the second degree and is a Class 2 misdemeanor.

prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." SDCL 23A–8–3(6) requires that a request for severance of charges or defendants under SDCL 23A–11–2 be made prior to trial. Williams did not raise this motion until mid-trial.

■ In discussion in chambers, the trial court noted that the motion was not timely made,[2] but did not deny the motion on that basis. The trial court denied the motion upon Williams' failure to show sufficient prejudice and cited *State v. Reiman*, 284 N.W.2d 860 (S.D.1979), and *State v. Winckler*, 260 N.W.2d 356 (S.D.1977), as the basis for the denial. In order to economize on time in judicial administration, the general rule has evolved that persons jointly indicted should be tried together. 284 N.W.2d at 865–66. This is especially applicable where, as here, one crime may be proved against two or more defendants from the same evidence. 284 N.W.2d at 865–66. *See United States v. Boyd*, 610 F.2d 521, 525–26 (8th Cir.1979).

■ Williams first contends that she was prejudiced because certain evidence was introduced solely against No Heart. This court has held, however, that admission of evidence against only one of several defendants does not on its own create sufficient prejudice to justify reversing the trial court when proper limiting jury instructions are given. 284 N.W.2d at 866; *State v. Bonrud*, 246 N.W.2d 790, 792 (S.D.1976). Here, the trial court instructed the jury twice that the evidence was admitted solely

against No Heart, once when the evidence was introduced and again in the jury instructions. We must presume the jury followed the limiting instruction. *State v. Reddington*, 80 S.D. 390, 396, 125 N.W.2d 58, 61–62 (1963). Consequently, those instructions protected Williams against prejudice from evidence admitted against No Heart.

■ Williams also argues that the trial court should have severed the trials because her defense was inconsistent with No Heart's. She contends that No Heart's testimony at trial forced her to take the witness stand. Her argument fails in light of the fact that had she not testified, the jury would have been instructed to draw no inference from her failure to testify. Moreover, the argument that defenses are "inconsistent" is not a generally accepted basis for severance. Courts look instead to whether defense strategies of co-defendants are antagonistic or whether real prejudice results from irreconcilable defenses. 610 F.2d at 526.

■ A motion to sever trials is addressed to the trial court's discretion, therefore clear prejudice and an abuse of discretion are required to justify reversal for denial of severance. 610 F.2d at 525; 284 N.W.2d at 865. A defendant must show more than a better chance for acquittal in a separate trial, he must demonstrate affirmatively that the joint trial prejudiced the possibility of a fair trial. 610 F.2d at 525.

■ The test here is whether Williams affirmatively demonstrated that the joint trial prejudiced her right to a fair trial. 610 F.2d at 525. We hold that she has not demonstrated that prejudice here. From

---

**2.** SDCL 23A–8–3 provides:

Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
  (1) Defenses and objections based on defects in the institution of the prosecution;
  (2) Defenses and objections based upon prior conviction or acquittal;

  (3) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings);
  (4) Motions to suppress evidence;
  (5) Requests for discovery under chapter 23A–13; or
  (6) Requests for a severance of charges or defendants under § 23A–11–2.

this record, the trial court did not abuse its discretion in denying this motion to sever.

No Heart has raised the fourth issue considered in this appeal. He questions the admission of the investigating police officer's opinion that Voigt's injuries were not caused by a fist. The officer testified that there was a cut on Voigt's left ear and a bump on his head behind the ear. Based on these observations and his experience, the officer opined that Voigt's injury was caused by an object sharper than a fist. The diameter of the bump the officer observed was, in his opinion, too small to have been caused by a fist or other flat object. The trial court admitted the officer's testimony over No Heart's objection that the opinion improperly invaded the province of the jury and lacked proper foundation.

▇▇▇▇ No Heart argues that the opinion given was beyond the officer's "realm of expertise" and therefore nothing more than conjecture and speculation. No Heart bases this assertion on the State's failure to lay a proper foundation for the officer's qualification as an expert and for the basis of the officer's opinion, thus he relies upon the officer's status as an expert. Nonexpert testimony, however, requires no foundation and under SDCL 19-15-1 (Federal Rule of Evidence 701) a nonexpert may testify regarding his or her opinions or inferences which are based on perceptions and which facilitate a clear understanding of the testimony or the determination of a fact in issue. *United States Fire Ins. Co. v. Dace*, 305 N.W.2d 50, 56 (S.D.1981). The officer gave his opinion based upon his observation of the injury and his perception of the situation in an attempt to clarify his overall testimony for the jury and help them determine a fact in issue—the cause and motivation behind Voigt's injury. Voigt's memory of the events in question was unclear; thus the officer's opinion was needed to shed light on conflicting testimony that was before the jury. The State made no attempt to have the officer qualified as an expert and the trial court gave no indication that his opinion testimony

was admitted because "scientific, technical, or other specialized knowledge" was needed to understand the evidence, or because the officer's "knowledge, skill, experience, training, or education" qualified him as an expert. *See* SDCL 19-15-2. The weight and credibility of the officer's opinion was for the jury to determine. *See, State v. Van Beek*, 88 S.D. 154, 216 N.W.2d 561 (1974). No Heart's objection to the absence of a proper foundation goes to the weight of the officer's opinion, but not to its competence. This court has said that the trial judge is allowed some latitude in admitting testimony. *Ewing v. Russell*, 81 S.D. 563, 565–66, 137 N.W.2d 892, 894 (1965).

No Heart's assertion that admission of the officer's opinion "invades the province of the jury" overlooks the fact that all opinion testimony is conclusory and goes to questions of fact which must ultimately be determined by the trier of fact. This court's adoption of SDCL ch. 19-15, derived from the Federal Rules of Evidence, demonstrates its belief that the jury's province is not infringed by the admission of expert and/or nonexpert opinions.

▇▇▇ The officer gave his opinion regarding the manifested result of an injury and his opinion on the cause of the injury, based upon his observation of the injury. He did not state his opinion on the medical or traumatic cause of the symptoms of Voigt's injury and therefore was not beyond the realm of common experience. It is true that when the cause of an injury is so far from the usual and ordinary experience expert testimony is needed, however, the question here requires recognition of the distinction between a wound caused by a fist and one caused by a sharper object. This distinction is not beyond the realm of the average person's experience.

The final issue considered on this appeal involves No Heart's assertion that the trial court committed prejudicial error when it refused to admit testimony regarding statements High Elk made to a police officer who was investigating the crime. The officer talked to High Elk later that night

about the evening's events and High Elk allegedly told him that Williams went through Voigt's pockets. The trial court also refused No Heart's offer of proof. The trial court's refusals were grounded in the hearsay rule. When specifically questioned at trial, High Elk testified that she did not see Williams take the wallet from Voigt's pocket. On appeal, No Heart contends that the officer's testimony concerning High Elk's statement was admissible hearsay under SDCL 19–16–28, Rule 803(24) or SDCL 19–16–35, Rule 804(b).

The trial court, prior to No Heart's assertion of SDCL 19–16–28, –35, as a basis for admissibility, treated High Elk's statement to the officer as a prior inconsistent statement and pointed out that the testimony was inadmissible on that theory because High Elk had not been given notice that the statement might be used, nor the opportunity to explain or deny the statement as required by SDCL 19–14–24, –25. *State v. Gage*, 302 N.W.2d 793 (S.D.1981). No Heart's counsel attempted to get around the notice requirements for use of prior inconsistent statements by requesting an opportunity to get High Elk back into court in order to comply with SDCL 19–14–25. No Heart, however, specifically waived this approach, the trial court established that his waiver was voluntary and knowledgeable and No Heart has not argued this theory on appeal.

No Heart cannot rely on SDCL 19–16–35 as authorization for admissibility of the officer's testimony. This theory was not presented to the trial court and is not preserved for appeal. *State v. Watkins*, 89 S.D. 82, 228 N.W.2d 635 (1975).

FOSHEIM, C.J., and WOLLMAN and DUNN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

## PREJUDICIAL JOINDER

The business of the courts is not efficiency. The business of the courts is not economy. The business of the courts is to mete out justice. If it can be done with efficiency and economy, surely that road should be journeyed. However, if economy and efficiency preclude the fair administration of justice, they must take the low road, while justice takes the high road. In this case, efficiency and economy took the high road, while justice took a backseat on the low road. I am referring to the failure of the trial court to sever the trials of No Heart and Williams.

SDCL 23A–11–2 provides: "If it appears that a defendant ... is prejudiced by a joinder ... of defendants ... for trial together, the court may order ... separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires...." Under this provision, appellant Williams made a motion for severance based upon the opening statement of No Heart's attorney and the cross-examination of the State's first two witnesses by No Heart's attorney. At this point, it became apparent that No Heart and Williams had inconsistent defenses. Appellant Williams contends it was an abuse of discretion for the trial court to refuse to sever her trial from that of No Heart, and that she was prejudiced as a result. I agree. Under the facts of this case, I would reverse and grant appellant a separate trial.

"Notwithstanding the need for efficiency, a joint trial is inappropriate if it sacrifices a defendant's right to a fair trial." *State v. Reiman*, 284 N.W.2d 860, 866 (S.D.1979). In this instance, highly prejudicial evidence obtained from the motel room was admitted at trial against appellant's codefendant, No Heart. The evidence was not admitted against Williams because there was nothing in this evidence which would link her to the motel room. As the majority opinion points out, admission of evidence against only one of several defendants does not on its own create sufficient prejudice to justify reversing the trial court. *Reiman*, 284 N.W.2d 860. However, this evidence, coupled with the defense testimony of No Heart implicating Williams and placing her in the motel room, clearly jeopardized her chance for a fair trial. Any cautionary instruction with regard to this evidence would be highly ineffective and would not overcome the fact that the State was able to indirectly apply

damaging evidence toward Williams through the testimony of her codefendant No Heart—although it could not do so directly.

Further, when it became obvious that No Heart, through his defense attorney, had a trial strategy of attempting to depict to the jury that he was engaged in a fight, but that Williams and Rachel High Elk stole the wallet, at that evidentiary instant, real and actual prejudice began to set in. Williams had a totally inconsistent defense with such a portrayal of the facts and her entire defense was antagonistic to her codefendant. Thenceforward on, it was manifestly unfair for Williams to be tried with No Heart. Without the testimony of No Heart, the State could not place appellant Williams in Motel Room # 22. When No Heart took the stand in his own defense and gave this testimony, he forced appellant Williams to do likewise, despite her right and intention not to do so, solely because of the adverse inference that would be drawn from her failure to testify in light of No Heart's implications. In *Reiman*, 284 N.W.2d 860, such a circumstance was specifically held to warrant a separate trial.

I find, under these facts, that the trial court abused its discretion in denying the motion for severance.

## UNREASONABLE SEARCH AND SEIZURE

A guest in a motel room is entitled to constitutional protection against unreasonable searches and seizures, *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, provided he has a legitimate expectation of privacy in the premises. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Under the circumstances of this case, appellant No Heart's expectation of privacy in Motel Room # 22 was reasonable and legitimate, and was in no way lessened by the error surrounding the occupancy of the room.

No Heart registered and paid for a motel room. He was given a key to (what he thought was) Room # 23 and was directed to a particular door. There was no room number marking on this door. In fact, all of the room numbers were poorly illuminated and difficult to identify. The key would not open the door to the designated room. Upon the suggestion of his companion, No Heart tried the key on the door adjacent, thinking that, perhaps, the wrong room had been indicated. Sure enough, the key opened the door to what was later found to be Room # 22. No Heart and his companions occupied that room.

No Heart did not know, nor did he have any reason to suspect, that he was in the wrong motel room. At no time was he aware that he was in other than the room he had registered and paid for.

Though these facts are unusual, they in no way detract from appellant No Heart's legitimate expectation that his room would be free from an illegal search. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Stoner*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. The circumstances surrounding the occupancy of the room did not vitiate his privacy interest therein. *United States v. Lyons*, 706 F.2d 321 (C.A.D.C.1983).

Further, it was not by happenstance that the motel manager directed the police to search Room # 22. It is clear by the record that the officers came to the motel, not at the manager's request, but in the course of pursuing their investigation and looking for No Heart. The police entered the room specifically in search of appellant No Heart, and not just to investigate the peculiarity of a light in a supposedly unoccupied room.

I would not distinguish this case from *Stoner*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, as the majority has done. This search was conducted without a warrant and without appellant No Heart's consent, and did not become lawful because conducted with the consent of the motel manager to either enter or search the room. The protection of the Fourth Amendment "would disappear if it were left to depend upon the unfettered discretion of an employee of the [motel]. It follows that this search without a warrant was unlawful." *Stoner*, 376 U.S. at 490,

84 S.Ct. at 893, 11 L.Ed.2d at 861. The articles found in the motel room should not have been entered into evidence. In sum, this search was conducted without a warrant of a motel room, rented and occupied by No Heart, and the Fourth Amendment protects that room and its lessee from a search and seizure absent an accompanying search warrant based upon probable cause.

I take note that on June 11, 1984, in *Nix v. Williams*, —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), a Sixth Amendment right to counsel case, the Supreme Court adopted an inevitable discovery exception to the exclusionary rule. In essence, it was held that if illegally obtained evidence would have inevitably been discovered despite the taint of illegality, no rational basis could exist for excluding that evidence. Under the circumstances of No Heart, there would have to be a factual determination below that regardless of any overreaching by the police, the evidence would have inevitably been obtained by legitimate means.