**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Michael HONOMICHL, Defendant and Appellant.**

No. 15424.

Supreme Court of South Dakota.

Argued March 24, 1987.

Decided July 29, 1987.

Robert Mayer, Asst. Atty. Gen., Roger A. Tellinghuisen, on brief, Atty. Gen., Pierre, for plaintiff and appellee.

James R. Haar, Tripp, for defendant and appellant.

WUEST, Chief Justice.

Defendant, Michael Honomichl, appeals his conviction of manslaughter in the first degree. We affirm.

On the evening of February 28, 1986, Randy Caldwell (Caldwell), was beaten to death outside a liquor store in Wagner, South Dakota. Witnesses saw three men armed with clubs attack Caldwell. Death resulted from head injuries received in the attack.

On March 5, 1986, defendant and co-defendants James Weddell (Weddell) and Enos Weston (Weston) were indicted for murder in the second degree and manslaughter in the first degree. Prior to trial defendant filed a motion to sever his case from that of his two co-defendants. Defendant asserted that it was possible each co-defendant would implicate the other at a joint trial and severance was necessary to avoid prejudice to defendant. The trial court denied defendant's motion.

Trial commenced on April 29, 1986, at which defendant again renewed his motion for severance. The motion was denied. At trial, both defendant and Weston testified that they did not strike Caldwell but that Weddell did. Weddell, however, testified that both defendant and Weston struck Caldwell with clubs. The trial court granted Weston's motion for judgment of acquittal before the case was decided, but both Weddell and the defendant were found guilty of manslaughter in the first degree. Defendant was sentenced to eighty years in the South Dakota State Penitentiary.

Defendant argues denial of severance prejudiced his right to a fair trial. Defendant claims the trial court erred in denying his pretrial severance motion because he informed the court he believed the co-defendants might incriminate each other and thereby present "antagonistic" defenses. In denying defendant's motion the trial court stated it did not believe it possessed persuasive evidentiary statements certain to appear at trial that would justify severance. Defendant renewed his motion for severance when the co-defendants began incriminating each other at trial as predicted, but the trial court denied defendant's renewed motion for severance. The court pointed out "we are now deeply into this trial," and the court further indicated it was still not convinced that severance was necessary. Defendant argues denial of his severance motions prejudiced his right to a fair trial.

Severance will be allowed upon a showing of real prejudice to a defendant. Courts have a continuing duty at all stages of the trial to grant a severance if preju-

dice does appear. *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *United States v. Boyd*, 610 F.2d 521 (8th Cir.1979). The motion to sever is addressed to the sound discretion of the trial court, and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. *State v. Andrews*, 393 N.W.2d 76 (S.D.1986); *State v. Maves*, 358 N.W.2d 805 (S.D.1984); *State v. No Heart*, 353 N.W.2d 43 (S.D.1984). Where each convicted defendant is shown to have participated in a common criminal act, more must be shown than that a severance might have afforded an increased chance of acquittal. A defendant must demonstrate affirmatively that the joint trial prejudiced the possibility of a fair trial. *Andrews, supra; No Heart, supra.*

When co-defendants have antagonistic defenses, the courts have applied a specific test to determine whether the trial was unfair.

> While there are situations in which inconsistent defenses may support a motion for severance, the doctrine is a limited one.... [T]he governing standard requires the moving defendant to show that "the defendants present conflicting and *irreconcilable* defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."

*United States v. Haldeman*, 181 U.S.App. D.C. 245, 559 F.2d 31, 71 (1976) (banc) (citation omitted) (Emphasis added), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). *See also, United States v. DeLuna*, 763 F.2d 897 (8th Cir. 1985); *United States v. Romanello*, 726 F.2d 173 (5th Cir.1984), *reh. den.* 732 F.2d 941; *United States v. Russell*, 703 F.2d 1243 (11th Cir.1983) *reh. den.* 708 F.2d 734; *United States v. Puckett*, 692 F.2d 663 (10th Cir.1982), *cert. den.* 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 and *cert. den.* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 497; *United States v. Talavera*, 668 F.2d 625 (1st Cir.1982) *cert. den.* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853; *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir.1981); *Boyd, supra; United States v.*

*McPartlin*, 595 F.2d 1321 (7th Cir.1979) *cert. den.* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43.

"[T]he mere presence of hostility among defendants or the desire of one to exculpate himself [or herself] by inculpating another have both been held to be insufficient grounds to require separate trials." *United States v. Barber*, 442 F.2d 517, 530 (3rd Cir), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971). "Thus antagonistic defenses do not require the granting of severance even when one defendant takes the stand and blames his [or her] co-defendant for the crime." *McPartlin*, 595 F.2d at 1334. *See also, DeLuna, supra; Boyd, supra.*

■ In this case the defenses were not irreconcilable. The state's expert witness testified that Caldwell died from multiple blows to the head. Numerous witnesses testified that both Weddell and defendant struck Caldwell with clubs. This is not the case where only one blow caused death and each defendant accuses the other of the fatal blow.

The testimony by the State's expert witness and numerous eyewitnesses permitted the jury to find both defendants guilty without having to infer both were guilty based merely on the conflict alone. We therefore hold denial of defendant's motions for severance was not clearly prejudicial or an abuse of discretion.

■ Defendant also contends that, after Enos Weston was acquitted as a matter of law, the jury could have reasonably inferred that the remaining co-defendants were guilty. In that regard, he argues, the joint trial further prejudiced his trial.

However, immediately following Weston's dismissal, the court explained to the jury:

> Ladies and gentlemen, as you can see, Mr. Weston is no longer in the courtroom, nor is his attorney. And the jury is now advised as a matter of law the charges against Enos Weston have been dismissed. This means that the guilt or innocence of Enos Weston are no longer before this jury. You must be careful

not to infer or speculate as to the guilt or innocence of the remaining defendants by reason of the action just taken by this court. I will, of course, instruct you again concerning this at the close of the trial.

True to its word, the court gave the following instructions to the jury:

The jury is instructed that the issue of the guilt or innocence of the Defendant Enos Weston, as to Counts 1 and 2, or any included offense, is no longer before you.

You must not consider such action by the court for any purpose.

You must not infer or speculate therefrom as to the guilt or innocence of any of the remaining defendants, namely, James R. Weddell, or Michael Honomichl, as to Counts 1 and 2 or any included offense.

Further, you must not conclude from the fact that this instruction has been given that the court is expressing any opinion as to the facts or as to the guilt or innocence of said defendants.

. . . .

You should give separate consideration and render separate verdict with respect to each defendant as to each count. Each defendant is entitled to have his guilt or innocence as to each of the crimes charged determined from his own conduct and from the evidence which applies to him, as if he were tried alone. The guilt or innocence of any one defendant of any of the crimes charged should not control or influence your verdicts respecting the other defendant. You may find one or more of the defendants guilty or not guilty. At any time during your deliberations you may return your verdict of guilty or not guilty with respect to any defendant on any count.

(Jury instructions 1 and 33)

Thus the court instructed the jury to consider the evidence individually against each defendant as though each were being tried alone, and such language is a sufficient cautionary instruction which guards against prejudice to an individual defendant in a joint trial. *Maves, supra.* We

presume the jury followed the limiting instructions. *Maves, supra; No Heart; supra.* There is no evidence the jury was unable to follow admonitory instructions and keep, collate, and appraise evidence relevant to each defendant. *Andrews, supra.*

Defendant's second argument is that the trial court, by restricting defense counsel's cross-examination designed to show bias on the part of a prosecution witness, violated defendant's confrontation rights under the Sixth and Fourteenth Amendments to the United States Constitution. Before trial, the State moved that defense counsel not be permitted to question Troy Greger concerning an incident that occurred shortly after the victim had been beaten. Troy Greger was a close friend of the victim, and after the attack on his friend Greger proceeded to defendant's home and allegedly fired shots at the house with a firearm. Greger was facing a charge of assault with a deadly weapon for that incident, and the State explained to the trial court that Greger could either elect not to testify for the State or else take the Fifth Amendment if questioned about the later incident. Defense counsel wanted to develop the later incident on cross-examination to show Greger's bias should Greger testify against the defendant. The trial court granted the State's motion in limine because it held the shooting incident was an after the fact occurrence and therefore irrelevant.

■ The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." "[T]he main purpose of confrontation is to secure for the accused the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected rights of cross-examination." *Davis, supra,* at 316–317, 94 S.Ct. at 1110. The bias of a witness is "always relevant as discrediting the wit-

ness and affecting the weight of his testimony." *Davis, supra.*

It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. [15], [19, 20], 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original).

*Delaware v. Van Arsdall,* 475 U.S., 673, ——, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

■ In *Van Arsdall,* defense counsel was barred from developing bias of the prosecution's key witness stemming from dismissal of a criminal charge against the witness in exchange for his testimony. The trial court prohibited *all* inquiry into the possibility that the State's witness was prejudiced as a result of the dismissal of another charge being held against him. In this case, however, defense counsel was able to attack Greger's credibility with all other evidence of his bias, and in fact, the jury heard about the Greger shooting incident as well through defendant's examination of another witness. Defendant was able to draw on all evidence of Greger's bias and the jury could judge the credibility of Greger's testimony. Therefore, defendant was not prejudiced, and the trial court appropriately limited cross-examination of Troy Greger.

Defendant's third argument is that the trial court erred in denying his motion for judgment of acquittal. Defendant claims the evidence was insufficient for the jury to find him guilty.

Our standard of review on denial of this motion is whether the State made out a prima facie case from which the jury could reasonably find the defendant guilty. *State v. Bult,* 351 N.W.2d 731 (S.D.1984); *State v. Blakey,* 332 N.W.2d 729 (S.D. 1983). Sufficiency of trial evidence rests on whether the evidence, if believed by the jury, is sufficient to find guilt beyond a reasonable doubt. *State v. Faehnrich,* 359 N.W.2d 895 (S.D.1984); *State v. Phinney,* 348 N.W.2d 466 (S.D.1984); *State v. Jorgensen,* 333 N.W.2d 725 (S.D.1983). In making such determination, this court will accept evidence and the most favorable inferences that can be fairly drawn from that evidence which will support the guilty verdict. *Faehnrich, supra; State v. Schafer,* 297 N.W.2d 473 (S.D.1980).

The verdict will not be set aside if the evidence sustains a rational theory of guilt. *Faehnrich, supra.* It is not an appropriate function of this court to resolve conflicts of evidence, determine the credibility of witnesses, or weigh the evidence. *State v. Battest,* 295 N.W.2d 739 (S.D.1980); *State v. Minkel,* 89 S.D. 144, 230 N.W.2d 233 (1975). Questions of credibility and weight of the evidence are jury questions. *Blakey, supra; State v. Peck,* 82 S.D. 561, 150 N.W.2d 725 (1967); *State v. Burtts,* 81 S.D. 150, 132 N.W.2d 209 (1964).

Witness testimony varied but did identify both defendant and co-defendant Weddell as assailants.

*Witness:* Troy Greger testified he saw defendant strike Caldwell on the side of the head with a bumper jack and saw Weddell strike Caldwell with what appeared to be a crowbar.

*Witness:* Cindy Greger testified that defendant struck Caldwell on the side of the head with a club and Weddell struck Caldwell on the head with a "skinny iron bar."

*Witness:* Fred Greger testified that defendant struck Caldwell twice on the back of the head with a tan wooden club and Weddell hit Caldwell in the back of the neck.

*Witness:* Scott Johnson testified he saw defendant standing over Caldwell's body with a jack and saw Weddell running toward Caldwell with a wooden club.

*Witness:* Thereon Greger saw Weddell with a shiny metal club and saw Weston hit Caldwell on the back with a red club.

*Witness:* Tammy Archambeau testified that she saw defendant with a jack and saw Weddell strike Caldwell with a crow bar or iron bar.

*Witness:* Brookie Zephier claims she saw Weddell hit Caldwell with an "L" shaped iron and saw Weston hit Caldwell with a red club.

*Witness:* Kevin Blaine saw defendant hit Caldwell on the left side of the head, saw Weddell strike Caldwell twice on the side of the face, and saw Weston strike Caldwell in the ribs with a wooden club or axe handle.

*Witness:* Larry Honomichl saw Weddell with a wooden club. He claims he heard Weddell exclaim, "Boy, did you see that, Mick? .... I got him a good one."

*Witness:* Mike Weston saw defendant swing at Caldwell with a "red funnel" and saw Weddell hit Caldwell on the left jaw with a wooden club. He claims he heard Weddell exclaim "Did you see that?"

*Witness:* Co-defendant Enos Weston claims he saw Weddell hit Caldwell on the left side of the head with a wooden club.

*Witness:* Defendant claims he only had a red plastic funnel but claims he saw Weddell strike Caldwell on the jaw with a wooden club.

*Witness:* Weddell claims he hit Caldwell on the upper body with his wooden club and then ran over to where another fight was happening across the street. Weddell claims that he saw defendant with a jack and saw both defendant and Weston beating on Caldwell.

Defendant argues the evidence did not establish that defendant's blows were the proximate cause of the victim's death. At trial, Dr. Randall, a pathologist and the State's expert witness, described the injuries the victim received and the probable cause of death. There was an area of bruising above the right ear with a hexago-nal configuration that could have been made by the end of a tire iron. There was also one or possibly two separate areas of impact on the left side of the jaw area that Randall testified could have been caused by the jack. Randall stated that in his opinion the impact to the left jaw area was more severe than the impact to the right side of the head, which in and of itself was less likely to have been the sole cause of death. Nevertheless, Randall believed both blows may have contributed to the victim's death because either blow to the head could have caused the damage to the brain stem area of the victim's brain.

█ Randall could not conclude with medical certainty that one blow and not the other was a sole cause of death. In his opinion, the concussion that caused the brain's regulation of heart beat and breathing to cease was the result of multiple blows to the head. This expert testimony therefore made it largely unnecessary to determine which defendant was responsible for the various wounds on Caldwell's head. The jury weighed the evidence, which was sufficient to show both co-defendants were guilty.

MORGAN and MILLER, Justices, concur.

SABERS, Justice, concurs in part and concurs in result in part.

HENDERSON, Justice, dissents.

SABERS, Justice (concurring in part and concurring in result in part).

I concur in all respects except as to severance, in which I concur in result. The burden of justifying the fairness of a joint trial should be upon the party requesting the joint trial. However, jointly tried defendants should not get a new trial simply because they urge defenses antagonistic to each other. Their defenses must be irreconcilable, i.e., mutually exclusive; if the jury believes one they must disbelieve the other. Here, the jury did not believe either one because they convicted both. In view of the substantial prosecution evidence here, the jury could reasonably disbelieve

both defenses. Therefore, their defenses were not irreconcilable and the State established that the defendants received a fair trial.

HENDERSON, Justice (dissenting).

## DUALITY OF FUNCTIONS IN THE APPELLATE COURT

First, we must review the trial court's ruling for correctness, or at least within a range of error of law which appellate courts seemingly permit the first decision-maker. This inculcates support of the legal system by those outside of it, for it builds within the extra-legal community the confidence that a litigant has not succumbed to a certain mortal who is then and there on the bench. By reviewing for correctness, we instill a dignity and acceptability of the trial process. P. Carrington, D. Meador & M. Rosenberg, *Justice on Appeal* 2 (1976).

Secondly, our function in the appellate courts is that which is often described as institutional review. Those on the appellate bench witness variations in results and divergences in practices. We know that trial courts work independently and have no self-regulating capacity to promote uniformity among their decisions. Thus, institutional review arises whereby courts at the trial level are, in a sense, commanded to use certain legal principles which have developed over a period of decades by which litigants and lawyers can predict an application of trial court power. *Id.* at 3. We therefore, at the appellate level, hand down, remit, clarify, decide, reconcile, adjust, adapt, accommodate, and harmonize the rules of former decisions previously announced with the decision at the lower court level. This often spawns criticism of appellate courts.

In the end, we are extremely concerned with the force of our decision on a particular litigant, but we must observe the general principles of law which apply to the affairs of all men and these two functions cannot be bifurcated to such extent that one is forsaken while the other is exalted.

Most recently, I related a story of Justice Oliver Wendell Holmes and Judge Learned Hand in *State v. Rufener*, 392 N.W.2d 424, 431 (S.D.1986) (Henderson, J., dissenting). Cardinal in my thinking was the belief that an overall objective of "justice" could not subserve the rules of evidence and fairness. Any old ballplayer learns, early, that one must play fairly by a set of rules. Our court system must survive by playing by the rules to achieve fairness. Believing that an analysis of this case reflects error, violation of legal principles and fair play (none of which is intended by the trial court), I launch my dissent extremely concerned with the method and manner of adjudication of guilt upon these defendants.

Each and every defendant is guaranteed a fair trial. U.S. Const. amend. XIV, § 1; S.D. Const. art. VI, § 2. While that trial need not be perfect, it *must* be fair. *See Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973). In my opinion, the circuit court denied defendants Weddell and Honomichl a fair trial when it refused to grant their motions for severance. Therefore, I dissent from the severance portion of the majority opinion.

As if by rote, the majority opinion recites the settled rule that we will not reverse a denial of a motion for severance absent an abuse of trial court discretion and a clear showing of prejudice to the defendants. *See State v. Maves*, 358 N.W.2d 805, 809 (S.D.1984).[1] Notwithstanding my personal fundamental grievances with the settled

---

**1.** "Prejudice by joinder occurs when there is a disparity in treatment between joint and single trials, if this disparity causes harm to the defendant." Comment, *Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure,* 74 Yale L.J. 553, 556 (1965). Another commentator gives an alternate definition of prejudice which is particularly applicable to this case. "'[P]rejudice' more often means a condition or event that unfairly permits a jury to infer guilt quite *rationally*. For example, a jury may find both defendants guilty because each blamed the other for the offense." Dawson, *Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices,* 77 Mich.L.Rev. 1379, 1410 (1979) (emphasis in original) (footnote omitted).

law,[2] it is clear to me that defendants in this action were so clearly prejudiced by their participation in a joint trial that denial of severance was a clear abuse of trial court discretion, which, even under our current body of law, requires reversal.[3]

Shortly after the slaying of Randal Caldwell, Weddell and Honomichl were identified as focal suspects in the crime.[4] We must highlight in our minds that Caldwell died from head injuries incurred during a melee in which appellants were active participants. Clearly, the best defense of each appellant was to implicate his codefendant and downplay his own role in the charged event. The circuit court was fully apprised, via motions made for severance, prior to trial, that each appellant intended to employ such a strategy. Despite this red flag of impending trouble, appellants' motions for severance were denied.[5]

In this case, each appellant was confronted with his codefendant's antagonistic defense. To effectuate a proper defense, each appellant was pushed to produce evidence that vindicated himself and incriminated the other. While each appellant cross-examined the other on those segments of the testimony that implicated him, each was compelled to defend against two accusers, the State, and his codefendant. It is precisely this scenario that has prompted "[a]n increasing number of courts [to] find joint trials of defendants with antagonistic defenses unfair." Dawson, *supra*, at 1422. *See, e.g., United States v. Crawford,* 581 F.2d 489 (5th Cir. 1978); *United States v. Johnson,* 478 F.2d 1129 (5th Cir.1973); *State v. Sauls,* 356 N.W.2d 516 (Iowa 1984); *People v. Braune,* 363 Ill. 551, 2 N.E.2d 839 (1936).

More pointedly, in *State v. No Heart,* 353 N.W.2d 43 (S.D.1984), this Court has written "the argument that defenses are 'inconsistent' is not a generally accepted basis for severance. Courts look instead to whether defense strategies of co-defendants are *antagonistic or whether real prejudice results from irreconcilable defenses." Id.* at 47 (emphasis added) (citing *United States v. Boyd,* 610 F.2d 521, 526 (8th Cir.1979)). The majority opinion expands our language in *No Heart,* 353 N.W.2d at 47, to adopt the more stringent rule set forth in *Boyd,* 610 F.2d at 526, that antagonistic defenses by themselves are insufficient, and in order for a denial of severance to reach abuse of discretion status, it must be shown "that the conflict is so prejudicial that the differences are irrec-

2. In my mind, due to the inherently prejudicial nature of joint trials and the dubious benefits of such proceedings, severance of defendants should be the general rule rather than the exception. *Maves,* 358 N.W.2d at 811–12 (Henderson, J., dissenting). *See* Dawson, *supra,* at 1379. Admittedly, the trend is opposite, as we, in the courts of this country, have consistently moved toward a greater reliance on joint trials for disposition of criminal cases in which more than one actor may be involved. *Id.* However, the Uniform Rules of Criminal Procedure provide for severance *as a matter of right* unless the trial court determines "that because of a significant risk that material evidence which cannot otherwise be preserved will be lost, the severance would defeat the ends of justice." Unif.R.Crim.P. 472(a) (Approved Draft, 1974). *See* 2 W. LaFave & J. Israel, *Criminal Procedure* § 17.2(g) (1984); Dawson, *supra,* at 1453. *See* 2 W. LaFave & J. Israel, *supra* § 17.2(g), at 374. As Dawson, *supra,* at 1380, so adeptly points out: "While the substantive criminal law scru-

pulously honors the principle of individual responsibility, that principle is jeopardized in a joint trial of two or more defendants."

3. SDCL 23A–11–2 in pertinent part provides:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

4. Recall, all parties opined that Enos Weston was not a true suspect in the killing. In fact, at the conclusion of State's case, Weston's motion for judgment of acquittal was granted.

5. The presence of mutually antagonistic defenses between codefendants has resulted in reversal of each defendant's conviction. *People v. Braune,* 363 Ill. 551, 2 N.E.2d 839 (1936); *Murray v. State,* 528 P.2d 739 (Okla.Crim.App.1974). *See People v. Markham,* 19 Mich.App. 616, 173 N.W.2d 307 (1969) (where counsel's failure to reveal antagonistic nature of defenses resulted in convictions not being reversed).

Minnesota, as per Minn.R. Crim.P. 17.03, has adopted an intermediate position which places "the burden of justifying a joint trial upon the party wishing it, ordinarily the prosecutor." Dawson, *supra,* at 1452.

oncilable." Even if we presume that the *Boyd* test is the correct one, and I certainly do not, in this case the defenses *were* absolutely irreconcilable.

Weddell testified that (1) he did not hit Caldwell in the head with a club; but (2) Honomichl did hit Caldwell in the head with a club. Honomichl testified that (1) he did not hit Caldwell in the head with a club; but (2) Weddell did hit Caldwell in the head with a club. I fail to conceive of a situation in which the variances in codefendants' respective testimonies are more irreconcilable or antagonistic than they were in this case.

I fear the majority opinion has confused irreconcilable defenses (or differences) with the jury's discretionary ability to reach a verdict inconsistent with both defendants' testimony. I submit that Honomichl's defense was "irreconcilable" [6] with Weddell's defense and "antagonistic" within the general meaning of the word [7] as expressed in *No Heart*, 353 N.W.2d at 47. The two sets of testimonies were incapable of reconciliation. Consequently, the circuit court committed reversible error when it failed to grant motions for severance.

Additionally, motions for severance were made by both appellants at various points throughout the trial. The settled record indicates that the circuit court was more inclined to grant severance motions, during trial, as it was uncomfortable with the manner in which the trial had progressed, but finally refused to sever defendants due to the investment already made into the trial.[8] Although I feel prejudice appeared at the onset of trial, it became more apparent, as the trial progressed, that separate trials should have been ordered.[9] Trial judges should be encouraged to grant severance motions made during trial if severance is "necessary to achieve a fair determination of the guilt or innocence of one or more defendants." American Bar Association Standards for Criminal Justice 13–3.-2(b)(ii) and commentary, at 13·37–38 (2d ed. 1980), and should be reminded of their "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921, 925 (1960).

I also wish to express that jury instructions are not the cure-all that the majority opinion makes them out to be. First of all, for the reasons expressed above, severance should have been granted before the case ever reached the jury, thus obviating the need for cautionary jury instructions. Regarding the instructions themselves, the jury was directed to consider the evidence individually against each defendant as though each one *were being tried alone*.[10] By the very words of the instructions them-

---

**6.** "Irreconcilable" is defined as: "Not reconcilable; implacable, incompatible. . . ." Webster's New International Dictionary of the English Language 1312 (2d ed. 1937).

**7.** "Antagonistic" is defined as: "Acting or tending toward antagonism; hostile; counteracting; inharmonious." Webster's New International Dictionary of the English Language 111 (2d ed. 1937).

**8.** This dilemma is noted in Unif.R.Crim.P. 472, comment at 239 (Approved Draft, 1974). *See* Dawson, *supra*, at 1410–11.

**9.** Evidence of the circuit court's growing uneasiness during trial regarding the severance issue is exhibited in two excerpts from Weddell's May 5, 1986 renewed Motion for Severance.
(1) "But I'm now, of course, more concerned by what has transpired. But we are now deeply into this trial, I'm not about to call a halt, even if I was absolutely convinced I should, and let this matter take its course and let this jury act and bring a verdict. I'm sure, depending on the verdict of course, there will be other activity with regard to this particular issue. But it seems to me that, and our rules require it, that severance motions be brought before trial. Which it was. But my position is that at that point on April 24th [sic] I simply was not in the possession of persuasive evidentiary statements which were certain to appear at this trial upon which I feel that a severance motion ought to be granted. Now, that is my position. And so if I have not said it, I say it again, I will deny the motion." Trial Transcript, 799–800.
(2) "As I indicated, I don't like the way this thing has developed, but I'm going to let this case take its natural course and then we will take—we will see what happens from there." Trial Transcript, 805.

**10.** The popular rationale is that joint trials are tolerated because they "are more economical and minimize the burden on witnesses, prosecutors, and courts." *Bruton v. United States*, 391

selves, and the majority's affirmation of them, each member of the jury was directed to simulate separate trials in their minds. If a separate trial is indeed the benchmark of justice, the logical solution is to make them readily available rather than pinning all hopes of a fair trial on a jury's questionable ability to compartmentalize information, which was presented at a joint trial as one continuous scene, without allowing seepage from one compartment to the other.[11]

Finally, the true nature of this trial is best captured in the unfortunate truth that the order of cross-examination, presentation of defense, and closing arguments by defense counsel was determined by the flip of a coin. Justice should not be random. A *fair* trial is guaranteed at every turn. Severance should have been granted.

U.S. 123, 143, 88 S.Ct. 1620, 1631, 20 L.Ed.2d 476, 489 (1968) (White, J., dissenting). A fairly recent study convincingly argues that many supposed efficiencies of joint trials are nonexistent or at least questionable, and in any event, the basic underlying fairness accorded a defendant in a separate proceeding far outweighs any debatable or minimal benefits achieved through joint trials. Dawson, *supra*, at 1382–97. *See* 2 W. LaFave & J. Israel *supra* § 17.2(g).

**11.** Questions have been raised regarding the effectiveness of cautionary instructions in such situations—not on grounds that juries deliberately ignore the court's instructions—but because sometimes the reality of the situation casts doubt on a jury's ability to comply with instructions. On the broad topic of instructions and their effects upon juries, *see generally Bruton*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476; *Delli Paoli v. United States*, 352 U.S. 232, 246–48, 77 S.Ct. 294, 302–03, 1 L.Ed.2d 278, 288–89 (1957) (Frankfurter, J., dissenting), *rev'd by Bruton, supra; Barton v. United States*, 263 F.2d 894, 898 (5th Cir.1959); *State v. Maves*, 358 N.W.2d 805, 812 (S.D.1984) (Henderson, J., dissenting); 2 W. LaFave & J. Israel, *supra* § 17.3, at 380; Dawson, *supra*, at 1405–09; Note, *supra*, 74 Yale L.J., at 554–55. *See also* Broeder, *The University of Chicago Jury Project*, 38 Neb.L.Rev. 744, 753–55 (1959); Comment, *Post-Conspiracy Admissions in Joint Prosecutions—Effectiveness of Instructions Limiting the Use of Evidence to One Co-Defendant*, 24 U.Chi.L.Rev. 710 (1957).