STATE of South Dakota, Plaintiff
and Appellee,

v.

Thomas MYERS, Defendant
and Appellant.

No. 15601.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1987.

Decided Aug. 19, 1987.

Robert Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Michael Stonefield, Public Defender's Office, Rapid City, for defendant and appellant.

MILLER, Justice.

This case involves the propriety of a sentence consisting in part of a lifetime revocation of driving privileges for a DUI (third offense) (felony). We affirm.

## FACTS

Thomas Myers (Myers), was charged with and pleaded guilty to driving under the influence (DUI) in violation of SDCL 32–23–1(2) and SDCL 32–23–4. A presentence investigation was ordered. Based upon Myers' long history of alcohol abuse and prior felony convictions, the trial court imposed a two-year sentence in the South Dakota State Penitentiary and unconditionally revoked all driving privileges for the remainder of Myers' life.

## ISSUE

Myers argues that the trial court abused its discretion in revoking his driving privileges for the remainder of his life.

## PROPORTIONALITY REVIEW

Myers asks this court to apply an Eighth Amendment proportionality review to the lifetime revocation of his driving privileges while State asserts that the proportionality review does not apply.

The United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), provided a three-prong analysis for determining the proportionality of a sentence under the Eighth Amendment. Subsequently, we held in *State v. Williamson*, 342 N.W.2d 15, 18 (S.D.1983), that "we must consider the pro-

portionality of the sentence *when a life sentence without parole is imposed."* (Emphasis in original.) *See also State v. Dillon,* 349 N.W.2d 55 (S.D.1984). Both *Williamson* and *Dillon* were modified by *State v. Weiker,* 366 N.W.2d 823 (S.D. 1985), wherein we extended the Eighth Amendment proportionality review to felony sentences for a term of years. However, we further stated in *Weiker* that we would not subject every felony sentence to exhaustive review. In *Weiker,* we quoted the United States Supreme Court in *Solem v. Helm* as stating:

'We do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.... Successful challenges to proportionality of particular sentences will be exceedingly rare.'

*Weiker,* 366 N.W.2d at 827 (citations omitted).

■ In light of the foregoing, this court will not extend an Eighth Amendment proportionality analysis to that part of a felony sentence which consists in the lifetime revocation of a driving privilege.[1] *Cf. State v. Crotinger,* 75 Ohio App. 443, 62 N.E.2d 494 (1945). Revocation of Myers' driver's license was done for the protection of the public and not merely for the purpose of enhancing his punishment.[2]

## ABUSE OF DISCRETION

■ Nor do we find that the trial court acted unreasonably or abused its discretion in the lifetime revocation of Myers' license. Myers was sentenced under the purview of SDCL 32–23–4, which provides:

If conviction for a violation of § 32–23–1 is for a third offense, or subsequent offense thereafter, the person is guilty of a Class 6 felony, and the court, in pronouncing sentence, shall unconditionally revoke the defendant's driving privileges for such period of time as may be determined by the court, but in no event less than one year from the date of his final discharge. If the person is convicted of driving without a license during that period, he shall be sentenced to the county jail for not less than ten days, which sentence may not be suspended.

At sentencing, the trial judge openly reviewed Myers' record with him. This record consisted of seven prior felony convictions (mostly check-related convictions) with eleven DUI convictions in the states of South Dakota, Texas, and Colorado. On at least three previous occasions, Myers had been arrested for driving without a license

---

1. *In Matter of Hansen,* 298 N.W.2d 816 (S.D. 1980), we cited *Blow v. Commissioner of Motor Vehicles,* 83 S.D. 628, 631, 164 N.W.2d 351, 352–53 (1969), as stating: "The right of a citizen to operate a motor vehicle upon the highways of this state is not a natural or unrestricted right, but a privilege which is subject to reasonable regulation under the police power of the state in the interest of the public safety and welfare." 298 N.W.2d at 817 (citations omitted).

2. *See generally* 7A Am.Jur.2d Automobile and Highway Traffic § 112 (1980); 60 C.J.S. Motor Vehicles § 164.1 (1969); *Szczech v. Commissioner of Public Safety,* 343 N.W.2d 305 (Minn.App. 1984); *Anderson v. Commissioner of Highways,* 126 N.W.2d 778, 783–84 (Minn.1964). *Cf. State v. Blood,* 360 N.W.2d 820, 821 (Iowa 1985); *State v. Pettit,* 360 N.W.2d 833 (Iowa 1985). In

*Thompson v. Thompson,* 78 N.W.2d 395, 399 (N.D.1956), it is stated that:

The question as to whether the revocation of a license because of an act for which the licensee has been convicted or because of the conviction itself is an added punishment has frequently been before the courts. The universal holding is that such a revocation is not an added punishment, but is a finding that by reason of the commission of the act or the conviction of the licensee, the latter is no longer a fit person to hold and enjoy the privilege which the state had theretofore granted to him under its police power. ·The authorities agree that the purpose of the revocation is to protect the public and not to punish the licensee. (Citations omitted.)

or driving under suspension or revocation. Myers appeared at sentencing with a broken nose, which was the result of a drunken spree while he was free on bail. Further, Myers has been unsuccessfully hospitalized for alcohol treatment on seven different occasions since 1969. The trial court stated at sentencing:

.... I'm going to unconditionally revoke your driving privileges for the remainder of your life because I feel that your history is [a] clear indication that you are not able to stop drinking.

Myers claims that there is little rationality for a lifetime revocation because the sentence would presuppose that Myers can never again gain sobriety or ever again safely operate a motor vehicle in this state. Myers further contends that the punishment is far in excess of anything justified in his prior record and that his driving record reveals no aggravating circumstances such as an accident or a fatality.

We do not agree with Myers. First, his license has been permanently revoked for the public's safety. We simply cannot overlook the awesome duty owed to society to attempt to insure safety on the highways of this state. Under SDCL 32–23–4, the trial court has the capability, authority, and responsibility to determine whether a lifetime revocation is appropriate under the circumstances.

Secondly, in light of his forty-year problem with alcohol, his several unsuccessful hospital treatments for alcohol, and numerous DUI convictions, Myers has demonstrated that he is not a likely candidate for rehabilitation. He does not deserve to possess the privilege of driving, primarily because of his lack of concern for the safety of others and his general disrespect for the law and society in general. This court will not wait for Myers to become involved in a serious accident, and perhaps one that would maim or kill, before approving the revocation of his license privilege. In a case such as this, a lifetime revocation is reasonable under the police power of the state pursuant to SDCL 32–23–4. The trial court has not abused its powers or discretion in imposing the lifetime revocation.

Affirmed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

### JUDICIAL REVIEW AS A DOCTRINE

Judicial review is not explicitly mentioned in the United States Constitution or amendments thereto. Often, the judiciary comes under stern criticism because of the doctrine of "judicial review." One might very well ask, what is judicial review? In my mind-set, it is this: Courts, having the duty to uphold the Law, must, when called upon to do so, compare a certain law, statute, municipal ordinance, or executive edict with the constitution, to determine if that promulgation of authority conflicts with the constitution. If it does, that promulgation may be declared unconstitutional by the judicial branch of government.[1] This has generated a raging debate throughout our Republic's history. In *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), then Chief Justice John Marshall enunciated the doctrine of judicial review. He simply reasoned that it was the court system which must decide cases and that a conflict often exists between the constitution and promulgations such as enumerated above, which spawned an absolute duty to declare the promulgation as being contrary to the constitution.

I question not, for one moment, that a legislature may pass laws to clarify previous laws which need clarifying; nor do I dispute that a legislature can make more abundantly clear its intent, when it is obvious, by court decision, that the original intent was poorly drafted or murky. Each year, in state legislatures, including our own, there are "repealers" and "amenders"

---

**1.** As then Circuit Justice Oliver Wendell Holmes said in *Johnson v. United States,* 163 F. 30, 32 (1st Cir.1908), "it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before."

passed to eliminate errors. With the volume of legislation passed, however, laws do often remain on the statute books which are vague or uncertain in meaning. This triggers litigation and creates interpretive analysis of another branch of government, the judicial branch. We have tried, in the past, to impose a fundamental rule of statutory construction, i.e., all provisions within a statute must be given effect, if possible. *State v. Heisinger*, 252 N.W.2d 899 (S.D.1977). Very early, we announced the rule that all courts of our state must judicially recognize and apply the statutes of this state. *In re Gibbs*, 51 S.D. 464, 214 N.W. 850 (1927). We have referred to amendments, concerning constitutionality, as making a change in the existing system. With respect thereto, we have said that "[t]he courts are under the duty to consider the old law, the mischief, and the remedy, and to interpret the constitution broadly to accomplish the manifest purpose of the amendment." *South Dakota Auto. Club, Inc. v. Volk*, 305 N.W.2d 693, 697 (S.D. 1981) (quoting 16 Am.Jur.2d *Constitutional Law* § 88, at 415 (1979)). *See State ex rel. Payne v. Reeves*, 44 S.D. 568, 184 N.W. 993 (1921). This Court, historically, has handed down many decisions concerning statutory construction and interpretation. It is part of the legal lore of this state. As litigation percolates through the system and cases ultimately arrive at the South Dakota Supreme Court, and are then and there decided by the rule of law, namely by judicial review, this Court is serving its legitimate function of the tripartite system of government. It strikes me that a decision which is simply "abrogated" (at state or federal level) constitutes a peril to the legitimate function of the tripartite system of government.[2] Judicial Review binds our Republic to the rule of law. Through our Nation's history, it has served as an enemy of hysteria, zeal, despotic executives, and majoritarianism.

**REDERTH—A HARBINGER**

With that background in mind, I allude to my special writings in *State v. Weiker*, 366 N.W.2d 823, 829 (S.D.1985) (Henderson, J., dissenting); *State v. Janssen*, 371 N.W.2d 353, 356 (S.D.1985) (Henderson, J., concurring in result); *State v. Rederth*, 376 N.W.2d 579, 581 (S.D.1985) (Henderson, J., concurring in result); and *State v. Sheridan*, 383 N.W.2d 865, 866 (S.D.1986) (Henderson, J., concurring specially). Most specifically, the reader's attention is called to *Rederth*, 376 N.W.2d at 581, wherein I expressed:

> For a summary of cases in the United States on the power of a trial court to suspend or revoke the operation of a motor vehicle driving license, *see State v. Nichols*, 264 N.W.2d 765 (Iowa 1978). How broad is the police power in South Dakota? Is ten years a "reasonable regulation under the police power of the state"? *See Matter of Hansen*, 298 N.W.2d 816 (S.D.1980). Under the decision of *Nichols*, Iowa had a state statute restricting the sanction to six years. In South Dakota, is the sanction limitless— such as a lifetime? Perhaps the state legislature, in its infinite wisdom, will someday speak.

Unfortunately, for the likes of appellant Myers, the State Legislature never spoke. We are faced with the fact that SDCL 32–23–4 has not been amended; thusly, it appears, on the surface, that the trial court is imbued with the power to revoke driving privileges for a lifetime. However, our state statute does not say so. Perforce, this Court must now implant its rationale and reasoning on the intent and power inherent within the statute. We are thus involved in statutory construction. Judicial review, as a doctrine, affixes itself upon the present statute and the penalty meted out by the trial court. Appellant's brief, at page three, states: "There is no doubt that this penalty is a legal possibility in this state...."

---

**2.** Reference is made to SDCL 2–9–4(8) regarding the creation of a subcommittee on Judicial Opinions in the State Legislature. *See Hanson v. Funk Seeds Int'l,* 373 N.W.2d 30 (S.D.1985) (concerning warranty of agricultural seeds and Senate Bill 49, 1986 S.D.Sess.L. ch. 410, abrogating the *Hanson* decision).

## APPELLANT'S CONTENTIONS

Notwithstanding the above concession in law, appellant would ask this Court to consider whether this "sentence" shocks the conscience of this Court per a line of old cases cited in my dissent in *State v. Helm*, 287 N.W.2d 497, 499 (S.D.1980), and/or is disproportionate to the crime. *See* elements of three-prong test most recently enunciated in *State v. O'Connor*, 408 N.W.2d 754 (S.D.1987).

## LIFETIME REVOCATION AS A SENTENCE

Was Myers technically "sentenced"? If it looks like a duck, quacks like a duck, and walks like a duck, it is usually a duck. A judgment was signed on November 17, 1986, by Circuit Court Judge Konenkamp. *Inter alia*, it recites: "[T]he defendant having been fully advised of his rights, and the Court having affixed this day [November 14, 1986] as the date for *pronouncing sentence....*" (Emphasis supplied mine.) Thereafter, there are five paragraphs captioned "ORDERED" and one of them states: "ORDERED, that the Defendant's driving privileges be revoked for the rest of his life...." At the heading of SDCL 32–23–4, it plainly states *"Punishment* for third or subsequent offense—Revocation of driving privilege—Jail sentence for driving while privilege revoked." Therefore, the statute looks like a punishing duck, quacks like a punishing duck, and walks like a punishing duck. It must be a punishing duck. In arriving at the intention of the legislature, it is presumed that the words of the legislature have been used to convey their ordinary and popular meaning unless the context or the apparent intention of the legislature justifies any departure from the ordinary meaning. *Oahe Conservancy Subdistrict v. Janklow*, 308 N.W.2d 559 (S.D.1981). Now I do not, for one moment, question that there exists respectable authorities, as cited in the majority opinion, which hold that the revocation of a license is not an added punishment.[3] But I respectfully disagree with the majority opinion that it is not a punishment, *under the statute of our state*, particularly where a driver's license is voided for a lifetime and where the statute literally states "punishment" by its express terms.

When a man's license to drive is taken away from him, for a lifetime, and he has not only himself to support but some innocent children, does not a lifetime revocation of a license, indeed, ripen into a punishment? True, the privilege to operate a motor vehicle is not an unrestricted right, and, true, it is a privilege to drive upon the public highways of this state. And, true, that right is subject to the police power of the state to see that its citizens are protected from the standpoint of public safety and welfare. However, it is my opinion that language and words cannot blind or blur the fact that the taking away of the privilege to drive an automobile can be of such duration, that to some individuals, it takes on the nature of a severe punishment.

## MAJORITY OPINION REJECTS BOTH CONSCIENCE OF COURT/PROPORTIONALITY TESTS

Therefore, and believing that there could be a time when a young or a middle-aged person could have their driver's license taken away by a trial judge for a lifetime, or nearly so, whereby that person is deprived of the necessities of life, I would hold that, in this case, or ones such as I have suggested by hypotheses, that (1) the conscience of the Court may be examined to determine whether or not it is shocked by the sentence per the old line of cases cited in my dissent in *State v. Helm* (2) and/or is disproportionate to the crime, then calling into consideration the three-pronged test alluded to earlier in *O'Connor. Weiker*, in

---

**3.** The general rule is that license "revocation or suspension is not a penalty, and that its purpose is not the punishment of the driver, but the protection of the public...." 60 C.J.S. *Motor Vehicles* § 164.1, at 820 (1969). However, some courts subscribe to the rule that revocation or suspension of a driver's license is a *penalty* designed, at least in part, to *punish* the offending automobile operator. *See MFA Mut. Ins. Co. v. Lusby*, 295 F.Supp. 660, 667 (W.D.Va.1969); *Fosgate v. Strelecki*, 103 N.J.Super. 435, 436, 247 A.2d 489, 490 (1968); *Hamilton v. Dick*, 254 Cal.App.2d 123, 124, 61 Cal.Rptr. 894, 896 (1967).

my opinion, attempted to somewhat circumvent, or at least limit, the holding in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

It is obvious that the majority opinion does not address the concept of "shock the conscience of the Court." In my opinion, it should be addressed. Considering the long addiction to alcohol (for over 40 years), the age of appellant (61), his recent previous incarceration in the State Penitentiary for DUI, and DUI convictions spanning four decades, appellant's chances of rehabilitation to the point of being able to cease drinking and driving is remote. Therefore, my conscience is not shocked and a lifetime revocation under this particular set of facts appears justified.

There are ways and means available to practitioners of the law to avail themselves of studies and statistics with reference to "DWI" or "DUI" convictions in this state and other Midwest jurisdictions. This is one of those "rare cases" where proportionality review punishment could be invoked; unfortunately, we have no criteria, court records, etc., from which we can make an appellate review as to the proportionality or disproportionality under the Eighth Amendment. The majority opinion sidesteps both the conscience of the Court test and the proportionality test. As indicated previously, my conscience is not shocked and I would address the proportionality aspect were it properly buttressed in the record.

## MAJORITY OPINION ADOPTS ABUSE OF DISCRETION TEST

If this Court attaches to an "abuse of discretion test," it opens the door to disparate sentences throughout the State of South Dakota. Every effort, at appellate level, should be made to minimize great disparity in sentencing within our state borders. *See* special writing of Mr. Justice Powell, *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556, 561 (1982). *See also* this author's dissents in *State v. Honomichl*, 410 N.W.2d 544, 550

(S.D.1987), and *State v. Weddell*, 410 N.W.2d 553, 557 (S.D.1987), on duality of functions in the appellate court. Adopting an abuse of discretion test, under this statute, enshrouds a sentence with a rule which is so very broad that variations in sentencing results would be birthed. As pointed out in my dissents in *Honomichl* and *Weddell*, the second function of appellate courts is institutional review. Its purpose, *inter alia*, is to ensure a degree of consistency in the application of trial court power. Variations in results and divergences in practices, at the trial court level, must have institutional review by the appellate courts.

## SENTENCING ALTERNATIVES

Although, under the facts of this case, I do not quarrel with the lifetime revocation, I respectfully point out to the Bench and Bar of this state, the Department of Commerce, and the State Legislature, that SDCL 32-12-31 exists. It obviously exists for a purpose. It provides as follows:

> The department of commerce and regulation shall not issue any license under this chapter to any person who is an habitual drunkard, or is an habitual user of narcotic drugs, or is an habitual user of any other drug to a degree which renders him incapable of safely driving a motor vehicle. (Emphasis supplied.)

Thus, there is an administrative remedy available wherein and whereby a man like Myers, or others, may be deprived of a license, under the laws of this state. In the future, as now, a trial court can revoke a license for a term of years which would then give a convicted driver the hope and opportunity to be licensed, once again, in his lifetime. Further, it would signal a ray of hope for his alcoholism and conceivably trigger his rebirth from chemical dependency.[4] Were a convicted driver unable to overcome his dependency problem, South Dakota would not be then obliged to grant him a license at the end of the revocation period. Those souls caught in the clutch of alcoholism are often to be more pitied than

4. Millions of "hopeless" alcoholics have been rehabilitated into useful lives. It is within the Judeo-Christian ethic to encourage the fallen, in society, to rise and become useful citizens again.

censored. Our statutes of this state, through the State Legislature, SDCL ch. 34–20A, have created a detailed state plan for prevention, treatment, and rehabilitation of alcoholism. Our State Legislature intended to decriminalize alcoholism. SDCL 34–20A–93. In *State v. Weiker*, 342 N.W.2d 7 (S.D.1983), this Court specifically recognized that rehabilitation was a chief goal of the criminal justice system. Not every alcoholic is incorrigible and beyond rehabilitation. Rather, reformation and rehabilitation is graciously visited upon the most severely addicted alcoholics. Respectfully do I tender that the grace of reformation, rehabilitation, and the door of hopeful change be permitted to remain open, so that a ring of finality does not create an echo of lifetime futility. By limiting the driving privilege for a number of years and through the employment of the Division of Licensing of the Department of Commerce, a ray of hope may shine forth for some person ensnared in alcoholism. Thereby, the State's interests will be protected from the dangers of the DUI/DWI driver by withholding from that driver a valid driver's license; and, correspondingly, the intent of the drug and alcohol abuse statutes as well as this Court's declaration for a goal in criminal justice will be served.