**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert GROETHE, Defendant and Appellant.**

No. 16083.

Supreme Court of South Dakota.

Considered on Briefs Oct. 13, 1988.

Decided April 19, 1989.

Ann C. Meyer, Asst. Atty. Gen. and Roger A. Tellinghuisen, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

Michael Stonefield, Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

MORGAN, Justice.

Robert Groethe (Groethe) was tried and convicted of driving under the influence of alcohol (DWI), in violation of SDCL 32–23–1(2) and SDCL 32–23–4, and with resisting arrest, in violation of SDCL 22–11–4(2). Groethe was sentenced to two years in the South Dakota Penitentiary on the DWI conviction, thirty days in the Pennington County Jail on the resisting arrest conviction, and his driver's license was revoked for the remainder of his life. Groethe appeals from the DWI conviction and that part of the sentence that revokes his driver's license for life. We affirm.

On August 1, 1987, Officer Mark Hanson (Hanson) of the South Dakota Highway Patrol had occasion to arrest Groethe for the offense of driving while under the influence after Groethe failed some field sobriety tests. Groethe raises no issue as to probable cause so we need not detail those events. When Hanson began to frisk him, Groethe shouted obscenities and resisted arrest.

After Hanson subdued and handcuffed Groethe he took him to the patrol car where he attempted to read Groethe his *Miranda* rights and the implied consent advisory. Groethe continued to yell obscenities and threats and Hanson was un-

able to complete the implied consent advisory.

At the jail, Hanson discovered that Groethe had at least two prior DWI convictions and, pursuant to a policy laid down by the Pennington County States Attorney,[1] advised Groethe that he would have to submit to a blood test. Before the blood technician was contacted, Groethe asked to call an attorney. After talking to an attorney, Groethe informed Hanson that his lawyer had advised him to take the blood test, and he had decided to submit to the test. A blood sample was drawn and subsequent chemical analysis indicated a blood alcohol content of .22 percent.

Prior to trial, Groethe's motion to suppress the blood test was denied. At the pretrial motion hearing, Groethe moved in limine to prevent State from referring to SDCL 32–23–7 which provides:

In any criminal prosecution for a violation of § 32–23–1 relating to driving a vehicle while under the influence of intoxicating liquor, or a violation of § 22–16–41, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, breath, or other bodily substance shall give rise to the following presumptions:

(1) If there was at that time five hundredths percent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

(2) If there was at that time in excess of five hundredths percent but less than ten hundredths percent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

---

1. Because of an inadequate record on this policy, and because we can decide this issue upon grounds of advice of counsel, we do not at this time pass on the propriety of the policy, but save that for a later day when the issue is preserved in the record, briefed and argued.

(3) If there was at that time ten hundredths percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

Percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 1.0 cubic centimeters of whole blood or 2100 cubic centimeters of deep lung breath.

The trial court postponed any ruling on Groethe's motion until the close of State's case when it decided, over Groethe's objection, to give jury instruction 14 [2] which set forth the .10 percent presumption. Groethe asserts that State forfeits the benefits of the statutory presumption when police fail to substantially comply with the mandatory implied consent provisions pursuant to SDCL 32–23–10, 32–23–11, and 32–23–12. It is uncontroverted that the police never read Groethe the implied consent advisory.

The issues on appeal are (1) whether the trial court committed reversible error by instructing the jury on SDCL 32–23–7(3) and (2) whether the trial court abused its discretion by revoking Groethe's driver's license for the rest of his life.

Groethe argues that the trial court erred in instructing the jury on the .10 percent presumption statute and relies on *State v. Bunnell,* 324 N.W.2d 418 (S.D.1982) and *State v. Hartman,* 256 N.W.2d 131 (S.D. 1977), where we said "noncompliance with the implied consent statutes, although not making the test sample and test results inadmissible, results in a forfeiture of the statutory presumptions of SDCL 32–23–7." *Hartman,* 256 N.W.2d at 135.

In *Hartman,* the defendant was arrested for DWI manslaughter. A police officer advised him of his constitutional rights but not of his statutory right to refuse to give a blood sample. The defendant consented to a blood test while he was unaware of his right to refuse. Likewise, in *Bunnell,* officers failed to give the advisory and the defendant was unaware of his right to refuse a blood test.

■ Groethe also relies on *Rans v. State, Dept. of Commerce & Regulation,* 390 N.W.2d 64 (S.D.1986), wherein we held that there was no substantial compliance with the statute when a motorcyclist's belligerent and uncooperative actions prevented an officer from reading the entire implied consent advisory. In that case, where we determined that the record reflected several opportunities when the officer could have read the advisory to defendant without danger to law enforcement personnel, we would not permit the abrogation of this statutory requirement based on the judgment call of a law enforcement officer. We continue to believe that a law enforcement officer may not decide, on his own, that a defendant has refused a chemical analysis solely because his uncooperative actions interfere with the reading of the implied consent advisory.

This case is like *Hartman, Bunnell,* and *Rans* in that police failed to advise the defendant of the implied consent statutes. The record also indicates that Groethe, like *Rans,* forcefully communicated that he was unwilling to listen to the advisory. However, all similarities stop there.

■ The purpose of the implied consent law is to protect the right to refuse to submit to a chemical test of blood alcohol content. *Hartman, supra.* Here, Groethe was permitted to consult with an attorney and subsequently consented to the blood test. Even though police failed to read the implied consent advisory, there is nothing in the record, nor does Groethe contend, that his counsel failed to inform him of his right to refuse the blood test. We presume that defense counsel routinely explains the nature of this offense in sufficient detail to give an accused notice of the implied consent law. *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). After he consulted with his attorney and upon his attorney's advice, Groethe gave knowledgeable consent to the test. Therefore, upon

**2.** Jury Instruction 14 was the South Dakota Criminal Pattern Jury Instruction 3–10–5.

these facts we find this case totally distinguishable from *Hartman, Bunnell* and *Rans* and it was not error for the trial court to instruct the jury on the .10 percent presumption.

■ As part of the sentence entered against Groethe, the trial court ordered that Groethe's driver's license be revoked for the rest of his life. This was done under the authority of SDCL 32–23–4, which provides, in part:

> If conviction for a violation of § 32–23–1 is for a third offense, or subsequent offense thereafter, the person is guilty of a Class 6 felony, and the court, in pronouncing sentence, shall unconditionally revoke the defendant's driving privileges for such period of time as may be determined by the court[.]

In *State v. Myers,* 411 N.W.2d 402 (S.D. 1987), this court eschewed Eighth Amendment proportionality analysis to lifetime revocation of driving privileges and adopted the abuse of discretion test in such cases. In *Myers,* the defendant was a sixty-one year old man with a forty-year addiction to alcohol. He had several prior felony convictions and multiple DWI convictions. In addition, he had a history of at least seven prior unsuccessful hospitalizations for alcoholism treatment. In *Myers,* we found no abuse of discretion in a lifetime license revocation for two reasons: 1) Myers' life history "has demonstrated that he is not a likely candidate for rehabilitation" and 2) public safety. 411 N.W.2d at 404.

Groethe is thirty-six years old[3] and already has an eighteen-year history of alcohol abuse. He has had at least eight DWI convictions and has also gone through unsuccessful alcohol treatment programs on at least three occasions. Equally important, although Groethe's driving privileges had been temporarily revoked for prior DWI charges, Groethe continued to drive. We fail to see where Groethe's life history is so distinguishable from *Myers.* He just

has not lived long enough to equal Myers' record but, given time, it appears that he will beat it. For his entire adult life, Groethe has demonstrated that he has an alcohol problem and will continue to drive even when his license is revoked. This scofflaw attitude toward driving under revocation[4] poses a serious risk to the public. While it is true, as the special concurrence notes in *Myers,* 411 N.W.2d at 407, that "[m]illions of 'hopeless' alcoholics have been rehabilitated into useful lives[,]" it is generally conceded that you first have to get their attention! Groethe's history of failed treatments, like Myers', clearly indicates that no one has gotten his attention. Hopefully this sentence has.

Although we affirm our holding in *Myers,* under the circumstances of that case, we recognize that Groethe is younger and that, in all likelihood, other cases will arise where the defendant is at a younger age than Myers. Henceforth, in such cases, we suggest that an appropriate sentence would be for lifetime *or until further order of the court upon adequate proof of alcohol rehabilitation.* We believe that such a provision will comport with the views that sentencing should be consistent with rehabilitation. Under the authority granted us by SDCL 23A–32–19, to "reverse, affirm or modify the judgment or order appealed from," we therefore adjudge and order that the judgment and sentence of the circuit court be, and the same is hereby modified by adding to the suspension of Groethe's license for the rest of his life, "or until the further order of the circuit court upon adequate proof of alcohol rehabilitation"; and, as thus modified, said judgment and sentence are hereby affirmed.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., dissents in part and concurs in result in part.

---

3. At the time of sentencing he had a life expectancy of thirty-nine years. Am.Jur.2d Desk Book, Item 159, (1979).

4. This issue is not before us so we leave it to stringent enforcement of the violations of driving under suspension provisions.

HENDERSON, Justice (dissenting in part, concurring in result in part).

In my special concurrence in *Myers,* cited by the majority, I wrote "[t]he majority opinion sidesteps both the conscience of the Court test and the proportionality test." *State v. Myers,* 411 N.W.2d 402, 407 (S.D. 1987). Without waxing into the details of my special concurrence in *Myers,* I noted that the majority opinion had adopted the "abuse of discretion test." I expressed: "Adopting an abuse of discretion test, under this statute, enshrouds a sentence with a rule which is so very broad that variations in sentencing results would be birthed." *Id.* Suffice it to say, *Myers* did not produce the criteria necessary for proportionality review under *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637, 649 n. 16 (1983). *See State v. Rederth,* 376 N.W.2d 579, 581 (S.D.1985) (Henderson, J., concurring in result).

There does not appear to be any satisfaction of the three-prong test in *Helm* contained in this appellant's various showings in the lower court's proceedings or at the appellate level. No statistics were adduced below so we cannot invoke proportionality review. Proportionality of sentences, under the Eighth Amendment, is vital in criminal sentencing. As I reflected in *Myers,* which is a minority viewpoint, the pronouncing of a sentence including revocation of a driver's license for a lifetime, is a sentence subject to proportionality review. In *State v. Janssen,* 371 N.W.2d 353, 356–58 (S.D.1985) (Henderson, J., specially concurring), I noted that the proportionality concept was addressed by three chapters of the Magna Carta. Proportionality, as a constitutional doctrine, is traceable from the Magna Carta, through the English Bill of Rights and George Mason's Virginia Declaration of Rights, to the Eighth Amendment. *Solem,* 463 U.S. at 284–86, 103 S.Ct. at 3006–07, 77 L.Ed.2d at 645–46. I do not swerve from my viewpoints, for I fear hysteria, zeal, and majoritarianism. Mood swings can destroy legal principles and people who are subject to the momentary idiosyncrasies of same. No penalty is *per se* constitutional. *Id.* The United States Supreme Court has observed that "[i]t would be anomalous indeed if the lesser punishment of a fine and the greater punishment of death were both subject to proportionality analysis, but the intermediate punishment of imprisonment were not." *Solem,* 463 U.S. at 289, 103 S.Ct. at 3009, 77 L.Ed.2d at 648. Like imprisonment, lifetime license revocation is somewhere between a fine and death. Proportionality cannot be shunted aside.

Therefore, I cannot join the majority opinion on its continued adoption of the abuse of discretion test; rather, I would adopt the test handed down by the United States Supreme Court in a case which arose on appeal from this very Court.

Here, appellant is unquestionably an alcoholic and has a history of DWI. This Court has obviously tempered its previous decision in *Myers* by the concluding paragraph in the majority opinion. Expressing the power of this Court under SDCL 23A–32–19, the majority opinion has seen fit to modify the suspension of appellant's license for the rest of his life by opening a little crack in the door that he might, one day, understand the waywardness of his driving on the public highways. I agree that he cannot go on jeopardizing the lives of innocent people. This direction, nay mandate, from the Highest Court of this State, to the trial court, adds a dimension of grace which heretofore did not exist under the *Myers* majority. Therefore, believing that there is hope for alcoholics, and further knowing that SDCL ch. 34–20A has created a detailed state plan for the prevention, treatment, and rehabilitation of alcoholism and drug abuse, I concur in the result of the final segment of the majority opinion. Again, I call to the attention of the Bench and Bar of this State, as well as the Department of Commerce and our State Legislature, that SDCL 32–12–31 provides:

**Unlicensable persons—Habitual alcohol or drug user.** *The department of commerce and regulation shall not issue any license under this chapter to any person who is an habitual drunkard,* or is an habitual user of narcotic

drugs, or is an habitual user of any other drug to a degree which renders him incapable of safely driving a motor vehicle. (Emphasis added.)

Therefore, our state lawmakers, as elected representatives of the people, have enacted legislation empowering a state department of government to confront and correct the problems and danger arising from alcoholics and drug abusers. Succinctly, it is this: When you become a menace on the highway, we shall no longer license you. Courts create law by case law; lawmakers create law by legislation. South Dakota has legislation on the statute books pregnant to the inquiry before us.